OPINION OF THE COURT
Robert L. Estes, J.
These proceedings were consolidated by order of the court dated April 8, 1983. There are four proceedings involving these girls, Lisa G. and Lucinda G.
Each child is the subject of a petition by the Commissioner of Social Services verified February 17, 1983 requesting review of the foster care status of the child. Each is also the subject of a petition by the Commissioner of Social Services verified March 8, 1983 requesting a determination that the child is permanently neglected by her *417 mother, Patricia G., and committing the child to the custody and guardianship of the Delaware County Department of Social Services.
The children have been in foster care since February 5, 1980, pursuant to a voluntary transfer of custody by their father to the petitioner after a child protective complaint had been made against him. The mother of the children did not join in the transfer, and the father’s authority to unilaterally transfer such custody is not apparent from the records of this court. Petitions verified February 7, 1980 and July 17, 1980 by the department for approval of the transfer instruments omit any reference to the mother. The petitions were granted. Petitions seeking permanent termination of the rights of the mother were filed by the department, verified August 8,1980. These were dismissed by decision and order dated December 26,1980. The Appellate Division, Third Department, affirmed by order dated July 28, 1981. (Appeal No. 39649.) Petitions seeking permanent termination of the father’s rights were filed, verified March 3, 1981. These were dismissed by the court on August 3, 1981.
Petitions seeking review of the foster care status of the children, verified January 7, 1981 and January 15, 1982, named both parents. It appears that the mother was given notice of the hearing of the former, but not of the hearing of the latter. She did not appear for the former hearing, having stated an inability to secure a ride from Auburn, New York, where she then lived. The petitions were granted in both instances. The latter order extended foster care through March 1, 1983.
The admitted purpose of the department in the present proceedings is not to free the children for adoption, but to terminate all contact between the children and their mother and to encourage the relationship between the children and their father. A written report from the department dated March 8, 1983 indicates that the children were placed with their father about March 1, 1983. The children were still in the custody of their father when the hearing was commenced on June 14, 1983.
A threshold question of fact is presented concerning the date of filing of the petitions for review of the foster care *418 status of the children. The chronological case record kept in the court file recites that the petitions were filed March 2, 1983. Argument has been made and the petitioner’s attorney has conceded, that if the petitions were filed on that date, the court would be required to dismiss the petitions as having been filed after expiration of the date of the last order continuing the foster care status of the children, citing Matter of Wayne T.D. (104 Misc 2d 314); Matter of Darnel (77 Misc 2d 1008); Matter of Shelia G. (NYLJ, Sept. 3, 1982, p 13, col 1, revd 94 AD2d 731); and Matter of Walker (87 AD2d 435, revd 58 NY2d 811). The court is urged by the petitioner’s attorney to hold a fact-finding hearing to determine the date of filing, based on the chronology of his custom and practice with respect to his transmittal to the Family Court for filing, of departmental petitions seeking such relief.
It is unnecessary to hold such a hearing. The court may take judicial notice of its practices with respect to the receipt, filing and docketing of petitions. (Fisch, NY Evidence [2d ed], § 1065, p 603.)
Until the early part of 1983, it was the custom of the court not to note a petition as filed, until the case was docketed. The volume and priority of other administrative tasks required of court personnel precluded the routine docketing of cases on the dates of delivery of petitions to the court. It was therefore the custom, generally, for the staff of the court to docket a case and consider the petition to be “filed”, as permitted by completion of other tasks having priority.
There was, at the time, a backlog of approximately two weeks between the date on which a petition was actually delivered to the clerk of the court and the date on which it would be entered in the chronological case record, and docketed. It is the date of delivery of the paper at the proper public office, and not the date of docketing, which is the filing date. (Bishop v Cook, 13 Barb 326.) The court therefore finds that the petitions requesting review of the foster care status of Lisa and Lucinda G. were timely filed.
By affidavit and order to show cause sworn to and dated March 31,1983, the petitioner moved the court for leave to file an amended petition seeking review of the foster care *419 status of the children, due to an “administrative oversight” which omitted from the petitions certain allegations regarding the basis for relief being requested. The motion was granted by order of the court dated April 8, 1983. In addition to additional allegations of fact, an additional prayer for relief was made in the amended petitions. The petitions requested that the “petitioner be directed to commence proceedings to terminate maternal parent’s rights”.
It should be noted here that the department had previously filed voluntarily with the court petitions of the very type for which it sought a court-ordered direction to file. Upon the receipt and filing of the amended petitions requesting such a direction, the court arranged a conference with counsel. At the conference, the petitioner’s attorney professed the intention of the petitioner to utilize the foster care review proceeding as a “dry run” to obtain the respondent mother’s testimony, and thereby be better enabled to prepare to meet her testimony in a later proceeding seeking to terminate her parental rights. His candor is commended.
It also developed that the petitioner had returned physical custody of the children to their father, concurrently with its filing of the petitions requesting the court to review the foster care status of the children. It was as a result of the conference that the afore-mentioned order of consolidation was made, upon the court’s own initiative.
At an initial hearing on June 14, 1983, motions to dismiss the petitions were placed on the record. Testimony and evidence was thereafter taken from witnesses who were called from Cayuga County by the petitioner. At the conclusion of the initial hearing, the case was adjourned without date upon consent of all the parties, and each party was afforded an opportunity to present memoranda of law in support of their respective positions regarding the motions to dismiss.
Essentially, there are two motions presented to the court. The first is a motion to dismiss the petitions seeking review of the foster care status of the children, on the grounds that return of the children by the department to their natural father amounted to a surrender of custody by the department, thereby terminating the foster care status *420 of the children and depriving the court of jurisdiction. The second is a motion to dismiss the petition seeking to permanently terminate the parental rights of Patricia W. G., on the grounds that the department, having relinquished custody of the children to their natural parent, Lawrence G., has lost its standing to commence such a proceeding pursuant to section 384-b of the Social Services Law.
The question regarding jurisdiction to review the foster care status of a child returned to a natural parent by the authorized agency concurrently with the filing of the petition appears not to have been directly addressed in the reports of cases of the State of New York. The court is not unmindful of the case of Matter of Darnel, but finds it to be distinguished by the fact that the petition in that case was filed five months before the children were returned to their mother “on a trial discharge”. (Matter of Darnel, 77 Misc 2d 1008, 1009, supra.) This court has previously continued custody of a child in the Department of Social Services, concurrently with a return of the child physically to the parent at the conclusion of proceedings to review foster care, but only upon consent of the parent and the parent’s attorney. (Matter of Amy W., Family Ct, Delaware County, Aug. 13,1980, Dec. 16,1980, No. K-163-77; Matter of Amy W., Family Ct, Delaware County, June 30, 1981, July 15, 1982, June 24, 1983, No. K-328-81.)
The definition of “foster care” in section 392 (subd 1, par [a]) of the Social Services Law does not contemplate care provided a child in the home of a natural parent. Although the term “foster parent” as defined in subdivision 19 of section 371 of the Social Services Law is deemed to include “any person” with whom a child is placed for care, both the term “foster parent” and the term “foster child” contemplate placement of a person who is “in the care, custody or guardianship of an authorized agency”. Judicial decisions have construed these terms to contemplate placement of a child with relatives, but have not gone so far as to include a natural parent. (Matter of Gravina, 89 AD2d 534; Miller v Youakim, 440 US 125.)
Apart from freeing a child for adoption, the court has only two dispositional alternatives under subdivision 7 of *421 section 392 of the Social Services Law. One allows the court to direct continuation of the foster care, and the other permits the court to direct the child to be returned to “the parent, guardian or relative”. (Emphasis provided.) Use of the word “the” instead of the word “a” in section 392 (subd 7, par [b]) demonstrates a legislative intent to permit the court to order the return of a child to the parent, guardian or relative who has temporarily transferred the care and custody of the child to the agency. (Carrieri, Practice Commentary, McKinney’s Cons Laws of NY, Book 52A, Social Services Law, § 392, p 216.) This remedy is to be distinguished from the placement of a child with a relative by the agency upon a continuation of foster care pursuant to section 392 (subd 7, par [a]).
The concepts of foster care and custody in a natural parent are mutually exclusive. The concept of foster care placement of a child with a natural parent is non sequitor.
The court holds that the return by the department to their natural father of the two children constitutes a voluntary termination by the department of the foster care status of the children, notwithstanding the concurrent filing of a petition to review that foster care status. Under the circumstances, there is no foster care status to review, and the court is without jurisdiction to entertain a proceeding to continue the children in foster care. Nevertheless, the court can adequately serve the interests of the children upon dismissal of these proceedings, utilizing a different vehicle for the ultimate protection of their best interests. The foster care petitions in respect of both children will therefore be dismissed.
In considering the motion to dismiss the proceeding requesting termination of the parental rights of the mother of the children, the court takes judicial notice that a petition pursuant to section 651 of the Family Court Act was filed against her by the father of the children, verified June 27,1983 and filed June 28,1983. Notice is also taken that a petition pursuant to section 651 was filed July 8, 1983 by the mother against the father verified July 7, 1983. In each of these cases the court is requested to grant custody of the children to the respective filing parent.
*422 The Legislature has expressly announced its purpose in enacting section 384-b of the Social Services Law, insofar as applicable to this case, as follows:
“(in) the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home * * *
“(b) The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without being * * * returned to their parents or other custodians * * * The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.
“It is the intent of the legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.” (Social Services Law, § 384-b, subd 1, pars [a], [b].)
In view of the transfer by the Department of Social Services to their father of custody of the children, the department’s standing to seek termination of the parental rights of their mother is terminated. The legislative purpose has been accomplished. It will not be further promoted by continuing these proceedings under section 384-b, because the children will not thereby become free for adoption by termination of one parent’s rights, and the children have already been reunited with one of their parents.
The department has conceded that its purpose is not to free the children for adoption, but simply to prevent future contact between their mother and the two children. Nevertheless, the department possesses valuable evidence which is relevant and material on the issues of custody and visitation of the children, some of which is already in the record. The court is confident that the department will be co-operative in producing further evidence upon request or subpoena by either party. If the court should determine that the best interests of the children require isolation from contact with their natural mother, such can be accomplished by an appropriate order in a custody proceeding.
*423 The petitions seeking permanent termination of the mother’s rights will be dismissed. The cross petitions for custody will be scheduled for a joint hearing, at which evidence of the parties bearing on the fitness of the parents and the best interests of the children will be received for consideration by the court.
In the meantime, in view of the extended term during which the children were in foster care while in the custody of the department, a temporary order will be made confirming the transfer of custody of the children to Lawrence G. and providing for visitation of his home by the Delaware County Department of Social Services. The purposes for such visitation are to facilitate the promulgation, implementation and maintenance of a child services plan deemed appropriate by the Commissioner of Social Services in order to minimize the likelihood of the return of the children to foster care, and to facilitate the delivery of preventive services to the family. This will implement the policy embodied in titles 4 and 4-A of article 6 of the Social Services Law.
The matter will be set down by the court clerk for further hearing at an early date.