OPINION OF THE COURT
Francis A. Affronti, J.
Petitioner, Monroe County Department of Social Services, alleges that respondent committed sexual offenses against the *864 subject child, age 13, all as set forth in the petition and its attached rider A, filed on December 16, 1986. (See, Family Ct Act § 1012 [e] [in].) The child is temporarily placed in foster care under petitioner’s supervision, where she remains, but due to her previously identified psychological and emotional needs an appropriate level of care, including a therapeutic setting, is now being sought.
Initially, the court finds that it possesses both subject matter jurisdiction and personal jurisdiction over the respondent who was present during the trial and represented by counsel. (See, Family Ct Act art 10.)
As petitioner’s primary and sole eyewitness, the youngster testified under oath (Family Ct Act § 152 [b]) that she took up residence with respondent and his wife, a few months prior to the alleged incident, having arrived there after living with her father in a neighboring county, with whom she had encountered many difficulties. During the trial, it was disclosed that she had previously been adjudicated a juvenile delinquent on an unrelated matter and placed on probation. It was readily gleaned that the youth is extremely combative and contradictory, placing her ultimate credibility in issue. She related that during the morning of December 15, 1986, she was awakened by respondent and told to ready herself for school. Shortly thereafter, while downstairs, clothed in a nightgown and bathrobe, a conversation occurred between them regarding certain punishment to be inflicted upon her for an apparent misdeed. According to Kristen, the parties proceeded upstairs and respondent demanded that she remove her clothing and lay on the bed. At respondent’s urging, she then laid on top of him and was instructed to place his penis in her vagina, which she was unable to do. Respondent then attempted intercourse while lying on the child but being unable to gain an erection, he too was unsuccessful. Added efforts at a different position proved fruitless and intercourse was never achieved. The episode concluded, the youngster was then sworn to secrecy, but while at school, shortly thereafter, the occurrence was disclosed, and a child protective referral made.
Almost as an aside, Kristen briefly alluded to the December 12, 1986 incident, referred to in the petition, and denoted that respondent directed her to remove her clothing and forced her to kiss him.
The respondent’s wife of 21 years, a registered nurse, was unable to provide any factual data regarding the happening *865 but did elaborate upon the youngster’s relationship with herself and her husband, and their charge’s behavior while under their control. Mrs. Prince further reported that Kristen, prior to the alleged abuse, confided in her regarding the use of sanitary napkins or pads, and that, according to the witness the child utilized an improper kind which caused her bodily irritation, a material factor if the witness’ recitation is believed. Of greater importance and extremely critical in attempting to assess the evidence and the credibility of the witnesses was Mrs. Prince’s description that her respondent husband has been impotent for many years, and therefore, unable to engage in intercourse.
The respondent, meanwhile, acknowledged waking up the child on the morning in question but vehemently denied the accusations against him, including the separate instance of December 12. While admitting to a conversation with Kristen concerning punishment on December 15, and while referring to the parties’ contact that morning, discrepancies in their respective stories prevailed, as set forth in the court record, which inconsistencies have been reconciled to the satisfaction of the court.
Petitioner’s physician, a hospital resident specializing in obstetrics/gynecology, recounted that the child’s physical examination was generally normal except the finding of a swollen and red genitalia, along with a small superficial laceration at the posterior aspect of the entrance to the vagina. The witness found trauma, redness, and swelling to the genital area, which could have been sustained by sexual intercourse, although according to the doctor, the victim did not believe penetration had occurred, which was consistent with the latter’s in-court testimony.
The above summary represents the primary evidence submitted and the court has . delved deeply into the salient facts in an effort to settle both issues of credibility and material testimonial inconsistencies conveyed by the respondent and victim.
In an article 10 fact finding any determination of abuse or neglect "must be based on a preponderance of the evidence” (see, Family Ct Act § 1046 [b] [i]).
Prior to the decision herein, comment is had upon a request made earlier by respondent for an order directing petitioner and/or Monroe County District Attorney to apply to the appropriate court for production of the child’s Grand Jury *866 testimony and that of others appearing before said body who were also to be called as witnesses in the present matter. In deciding the motion, reliance was had upon an earlier decision of this court and its controlling precedent, thereby resulting in an order that the District Attorney immediately apply to the Monroe County Court for production of the testimony. (See, Matter of Ruth L., 126 Misc 2d 1053.) In compliance therewith, the transcripts were supplied, and an "in camera” inspection revealed that the information therein had previously been elicited during the child’s trial testimony, with the exception of very limited and material contradictory data on the issue of penetration. It was thus decided that the Grand Jury evidence was merely cumulative and irrevelant, and was not to be handed over for cross-examination or impeachment purposes. With reference to the limited discrepancies, counsel was allowed to refer to the transcript for cross-examination, if desired, which opportunity was declined. A stipulation ensued whereby all counsel consented to the court utilizing the victim’s previously recorded testimonial contradictions, if necessary, in reaching its decision.
In addition to the above, a new and legally unique dilemma, never before decided, was presented, whereby the court was informed that the concurrent felony criminal proceeding pending against the respondent arising from the same acts alleged in the present petition had been dismissed by the Monroe County Grand Jury. The court then inquired of counsel as to whether "judicial notice” or any probative weight should be afforded to the Grand Jury action in the case now before it. Since legal guidance controlling the issue is completely lacking because the question has never been previously raised, the query appears ripe for judicial ruling.
The Grand Jury, as a statutorily constituted body (see, CPL art 190), publicly handed down a "No True Bill” on the felony complaint, and all but respondent argue that the dismissal is of no moment to the Family Court. They based their contentions upon the obvious legal distinctions existing between the Grand Jury and this court, such as their intrinsic makeup, the differing burdens of proof, and the varying evidentiary rules imposed, among others, each of which, taken independently, is undisputed. However, counsels’ conclusions are not so apparent after further analyzing both forums with application to the current facts. Certainly, it must be strongly emphasized that the criminal dismissal is by no means dispositive of the instant proceeding, for such is not the issue, but merely *867 whether it deserves any recognition in this court’s decision-making process. Counsel "beg the issue” and fail to address the obvious, namely, that the Grand Jury finding is now a matter of record before this court. It is also significant that the proof required before a Grand Jury does not rise to the level needed to sustain the within petition and is substantially less than a "preponderance”. (See, CPL 190.65 [1]; 190.75 [1]; Family Ct Act § 1046 [b] [i].)
Importantly, the Grand Jury is "impaneled by a superior court and [constitutes] a part of such court” (see, CPL 190.05), and if "the evidence before the grand jury is not legally sufficient to establish that such person committed such crime * * * or * * * the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime * * * it must dismiss the charge * * * [and] file its finding of dismissal with the court by which it was impaneled.” (See, CPL 190.75 [1]; emphasis added.)
Of course, a Grand Jury does not determine guilt or innocence, but only if "charges are sufficiently supported by evidence to warrant a trial”. (See, People v Hunter, 126 Misc 2d 13, 15, citing People v Calbud, Inc., 49 NY2d 389; People v Watson, 127 Misc 2d 439.) Here, the Grand Jury, acting as a separate body, within its statutory authority, heard identical witnesses as those appearing in this abuse action and returned a dismissal based upon competent evidence, a matter of record, which cannot be disregarded.
Courts may take judicial notice of matters relevant to its proceedings, along with other material, all as prescribed by statute and case precedent, and while a Grand Jury does not constitute a judicial proceeding, its ultimate decision is one of public record. (See, Family Ct Act § 164; CPLR 4511; Casson v Casson, 107 AD2d 342; Matter of Lucinda G., 122 Misc 2d 416; Matter of Sunhill Water Corp. v Water Resources Commn., 32 AD2d 1006; Graffeo v Brenes, 85 AD2d 656; Grady v Utica Mut. Ins. Co., 69 AD2d 668.) The District Attorney argues to the contrary, stating that "under typical situations, the court would not take notice of a Grand Jury disposition, based upon relevance and materiality” and that "the secrecy of the proceedings and lack of identity of the parties makes the action of the Grand Jury irrelevant to the Family Court proceedings.” However, this is not the "typical situation”, for the return of a "No True Bill” removed the "lack of identity” argument of counsel, thereby producing a fact which supports the Grand Jury’s decision as one of relevancy to this court, a *868 fact having universal notoriety, "incapable of dispute among reasonable men.” (See, Fisch, New York Evidence § 1049, at 592, citing People v Alicea, 25 NY2d 685, and Fed Rules Evid, rule 201 [b].)
The commission of a sex offense, as statutorily defined, is the threshold question both this court and the Grand Jury were called upon to find. (See, Family Ct Act § 1012 [e] [iii]; Penal Law art 130.) The court will not attempt to invade the minds of the prosecutor and grand jurors nor will it probe into the procedural aspects of the presentation itself, or infer evidence not known to it, other than to conclude that the criminal disposition, although not determinative of the facts at bar, is conversely not totally irrelevant either. In its memoranda discussion counsel has conceded that this court "has gained knowledge of a portion of the Grand Jury proceeding which indicate some degree of relevancy”. This court will not rely upon counsels’ proposed inferences or assmptions in deciding this issue but solely upon the unrefuted evidence before it.
As such, it is the conclusion herein that judicial notice can be taken of the Grand Jury decision and that this court may assign to such "notice” any appropriate and applicable weight deemed necessary, on a case-by-case basis, in determining the merits of an action commenced under Family Court Act article 10. Indeed, the court is cloaked with an obligation to do so and would be remiss if it failed in such duty. However, with the above issue decided, and regardless of same, the in-court evidence in the case at bar is independently sufficient for a decision to be rendered without reliance upon the Grand Jury dismissal.
Therefore, upon a thorough review of the totality of the evidence, including the demeanor and credibility of the witnesses, and after resolving pertinent evidentiary inconsistencies, it is the conclusion herein that petitioner failed to prove the acts as proffered. (See, Family Ct Act § 1046 [b] [i].) Accordingly, the petition is dismissed in its entirely.