# IN RE: JOHANNA F.

[No. 110, September Term, 1978.]

*Decided March 29, 1979.*

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Barbara Kirsch, Assistant Public Defender,* on the brief, for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The only issue for decision in this case, in which we ordered the issuance of a writ of certiorari to the Court of Special Appeals on our own motion before decision by that court, is whether the Circuit Court of Baltimore City in the exercise of its powers over juvenile causes (the court) had jurisdiction to order, on 26 July 1978, that Johanna F. be committed to the care and custody of the Secretary, Department of Health and Mental Hygiene — Juvenile Services Administration (the Department), for placement at Elan One, a residential treatment facility in Maine.[1] As we hold that the court had jurisdiction to issue the order, we affirm the judgment.

I

Johanna was born on 30 August 1959. She came under the exclusive original jurisdiction of the court at the age of 13

---

[1]. The custody order designated the facility as "Elon I" and gave its address as "Portland Springs, Maine." We understand that the correct name is "Elan One," and that it is located in Poland Springs, Maine.

years. Code (1974, 1978 Cum. Supp.) § 3-804 (a). *See* § 3-804 (d).[2] On 20 September 1972 the State's Attorney for Baltimore City filed a petition in the court showing that she was delinquent for the reason that on the day before she "feloniously, wilfully and of deliberately premeditated malice aforethought did murder [a child] age 3." She was duly found to be delinquent upon a determination that she had committed an act which would be a crime if committed by an adult and that she required supervision, treatment, or rehabilitation. Code (1957, 1973 Repl. Vol.) art. 26, § 70-1 (g) and (h).[3]

It is no more than fair to say that every attempt was made during the succeeding six years to supervise, guide, treat and rehabilitate Johanna. We give a compendium of those efforts. On 24 November 1972 she was committed to the Department and sent to the Montrose School pending placement. On 28 August 1973 she was placed in the Edgemeade Rehabilitation Center, Mountain Home, Idaho. She absconded from that facility on 6 January 1974. She was apprehended and returned to Montrose School on 5 February 1974. By order of 9 January 1975, the court committed her to the Department for placement at Elan One. She completed the initial treatment phase of its program and advanced to "a semi-independent living situation." She became pregnant and the pregnancy was medically aborted. She became extensively involved in the use of drugs. She attempted to commit suicide. In June 1977, she absconded from Elan One.

The following September Johanna was taken into custody in Baltimore City where she was working as a "live-in baby

---

2. To avoid confusion, we cite to the statutes as presently codified. In 1972 juvenile causes were covered by Code (1967, 1973 Repl. Vol.) art. 26, §§ 51-71. Art. 26 was repealed by Acts 1973, 1st Sp. Sess., ch. 2, § 1. Juvenile causes were placed in Code (1974) §§ 3-801 to 3-842 of the Courts and Judicial Proceedings article. Acts 1975, ch. 554 repealed those sections and enacted new §§ 3-801 to 3-833 in lieu thereof. Throughout the revisions there were no changes in substance as to the statutes relevant to the appeal before us.

Hereinafter, unless otherwise indicated, references to sections are to the Courts and Judicial Proceedings article of the 1974 Code, 1978 Cumulative Supplement.

3. Code (1974) § 3-801 (1) of the Courts and Judicial Proceedings article also defined "delinquent child" in these terms. In the present definition, "guidance" is substituted for "supervision." Code (1974, 1978 Cum. Supp.) § 3-801 (1) of the Courts and Judicial Proceedings article.

sitter." She was interviewed by Dr. Ivan Laurich of the Medical Office of the Supreme Bench of Baltimore City. He opined that she was not in need of institutionalization at that time. She was enrolled in the Maryland Business School for GED/Secretarial Training and placed in a foster home. That placement and several following placements in foster homes were terminated at the request of the foster parents due to Johanna's resistance to abiding by rules of conduct. She was placed at the Youth Hostel, but that "was terminated for creating conflict among the other residents." She again became involved with drugs and her attendance at school was spasmodic. Efforts were made to place her in a psychiatric halfway house with out-patient therapy, but she refused to attend therapy sessions. She "effectively sabotaged" interviews for admission to St. Paul House and Fellowship House with the result that she was not accepted. In April 1978 arrangements were made with an agency to finance an apartment for her provided she attend school and refrain from the use of drugs. Shortly thereafter she failed to comply with those conditions. Her use of drugs increased to the point where all her spending money was being used to obtain them. Frequent complaints were received from the manager and tenants of the apartment in which she was residing about the disturbances she was causing. In May of 1978 she was committed to Springfield Hospital following an overdose of drugs. She was released two weeks later and attempted suicide that same night. Unsuccessful in her attempt to be recommitted to Springfield, she was referred to Second Genesis but was not accepted because of the murder charge.

Other resources being exhausted, Elan One was contacted and agreed to take Johanna back into its program. On 30 June 1978, before this could be effected, she ran away, and a warrant was issued for her apprehension on charges of "being in violation of court order by running away and refusing to cooperate with the court." About two weeks later she was located in Columbia, South Carolina and made another attempt to commit suicide. She was brought back to Baltimore the next day. Upon determination by the court that it was necessary to detain her pending a hearing she was

placed in the custody of the Department until 18 July on order of the court issued 13 July. On 17 July a probation worker of the Department of Juvenile Services petitioned the court to take action on the matter. At a hearing on 18 July the case was postponed by the court because no parent was present nor had the Public Defender's Office been notified, and by order the same day the custody of the Department pending a hearing was extended to a period not exceeding 30 days.

On 26 July there was a plenary hearing before the court at which Johanna had the assistance of counsel. Testimony was received by the District Supervisor of Committee Programs for the Department of Juvenile Services, the probation worker who had petitioned the court to take action (referred to in the proceeding as a "juvenile counsellor"), a medical doctor and a psychologist from the Medical Office of the Supreme Bench of Baltimore City, Johanna's mother and Johanna. The judge rendered an opinion from the bench. He found that Johanna was "no longer a hazard to public safety," which he "rejoiced in" as "indeed a substantial development, a welcome development." He also found, however, that Johanna needed "much more rehabilitation," which he deemed "a matter of serious concern." He observed that for a year she had the chance to go back to her mother, but "[i]t has not worked out from both ends. Her mother has rejected her daughter, and the daughter has rejected her mother." On the other hand, he believed that, on balance, Elan One "did an enormous help," and although it did not solve all the problems in two and a half years, "I don't think you can diminish what the accomplishments were." The judge declared that realistically there were only two alternatives with respect to the current disposition of Johanna — community placement or institutional placement. It was the unanimous view of the medical doctor, the psychologist and the juvenile counsellor that community placement was not appropriate in the circumstances. It was the opinion of the medical doctor and the psychologist that institutional placement in other than Elan One "would be a caretaking procedure only," and that, the judge observed, "is what we are not interested in. . . ." The major concern was further

steps toward rehabilitation. The order of 26 July 1978 committing Johanna to the custody of the Department for placement at Elan One followed. It set out the basis for the court's action:

> WHEREAS, Johanna ... has been adjudged a delinquent and has been made a ward of this Court at an adjudicatory hearing duly held on the 20th day of November 1972; and this cause having come on for disposition at a hearing duly scheduled on notice to all parties; and the testimony of witnesses and argument having been heard; and the Court having considered the respondent's age and physical and mental condition; the availability and respondent's amenability to treatment, training and a program of rehabilitation best suited to the physical, mental and moral welfare of the respondent consistent with the public interest; the nature of the offense alleged to have been committed or participated in by the respondent; and the public safety; and it appearing to the Court that the best interests of both the respondent and the public would be served by removing the respondent from her present environment ....

Johanna claims now, as she claimed below, that the court lacked jurisdiction to order that she be returned to Elan One.

## II

Section 3-804 spells out when the court has exclusive original jurisdiction over a child and when it does not have jurisdiction over a child. It has exclusive original jurisdiction over a child alleged to be delinquent, § 3-804 (a), unless that child was 14 years old or older and the allegation to show delinquency was that he had committed an act, which, if committed by an adult, would be punishable by death or life imprisonment, § 3-804 (d) (1).[4] It is plain, therefore, that the

---

4. The court may obtain exclusive original jurisdiction over a child 14 years old or older in such circumstances under an order removing the proceeding to it pursuant to Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) art. 27, § 594A.

court obtained exclusive original jurisdiction over Johanna by virtue of the petition filed in 1972. Although the act which she was alleged to have committed would have constituted murder in the first degree if committed by an adult, she was then only 13 years of age. Section 3-806 (a) [5] provides:

If the court obtains jurisdiction over a child, that jurisdiction continues until that person reaches 21 years of age unless terminated sooner.

Thus, the jurisdiction obtained by the court over Johanna would continue until she became 21 years old, unless terminated sooner.

Johanna urges that the court's jurisdiction over her terminated under the provisions of § 3-825: [6]

(a) Except as provided in subsections (b) and (c), an order vesting legal custody in an individual, agency, or institution is effective for an indeterminate period of time.

(b) An order providing for custody of a child adjudicated delinquent or in need of supervision may not exceed three years from the date entered. However, the court may renew the order upon its own motion, or pursuant to a petition filed by the individual, institution, or agency having legal custody after notice and hearing as prescribed by the Maryland Rules.

(c) An order under this section is not effective after the child becomes 21 years old.

Johanna points to the fact that when the court on 26 July 1978 ordered her committed to the custody of the Department for placement at Elan One, the original order under which she had been placed at Elan One had expired under the provisions

---

5. Formerly § 3-815 (a) in the 1974 Code and art. 26, § 70-3 in the 1957 Code, 1973 Repl. Vol.

6. Formerly § 3-835 in the 1974 Code and art. 26, § 70-20 in the 1957 Code, 1973 Repl. Vol.
As to § 3-806 (a) and § 3-825, *see* note 2 *supra* and Acts 1969, ch. 432, § 2; Acts 1973, 1st Sp. Sess., ch. 2, § 1; Acts 1974, ch. 358 and ch. 691, § 8; Acts 1975, ch. 554; Acts 1976, ch. 457 and ch. 463.

of § 3-825 (b) by the lapse of three years from the date it was entered. She argues that § 3-825 (b) operated to divest the court of jurisdiction over her upon the expiration of the original order. In other words, she contends that as soon as she could no longer be contained at Elan One under the original order, the jurisdiction of the court over her, which it had obtained by the 1972 allegation of delinquency, was finally terminated. Jurisdiction could be regained, she urges, only upon a fresh allegation, duly made, as required by § 3-804 (a), namely that she was delinquent, in need of supervision, or in need of assistance. We do not see it that way.

After the allegation against a child under the jurisdiction[1] of the court has been proved at an adjudicatory hearing, § 3-819, the disposition of that child shall be determined at a separate hearing, § 3-820 (a). "The overriding consideration in making a disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest." § 3-820 (b). The disposition of the child which the court may make is not unbridled, however. With respect to an award of custody, the question must arise "in connection with a matter which is within its exclusive jurisdiction under Sections 3-804 and 3-805 (a) of the Courts Article,[7] and the determination of the question [must be] necessary to make an appropriate disposition." Maryland Rule 917 (a). If this test is met, the court may commit the child, as it did here, to the custody of the Department for placement in a designated institution, § 3-820 (b) (2),[8] subject to certain limitations on the place of

_____

7. Section 3-805 (a) reads:

   If a person is alleged to be delinquent, the age of the person at the time the alleged delinquent act was committed controls the determination of jurisdiction under this subtitle.

8. Section 3-820 (b) provides that in furtherance of the overriding consideration in making a disposition the court may:

   (1) Place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate;
   (2) Commit the child to the custody or under the guardianship of the Juvenile Services Administration, a local department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency; or

commitment set out in § 3-823. And, as we have seen, an order providing for custody of a child adjudicated delinquent may not exceed three years from the date entered, § 3-825 (b).

It is clear that jurisdiction and custody are separate and distinct. The statutes and rules regarding them are unambiguous and in no way conflicting. Section 3-825 (b) only qualifies the court's power regarding custody. The running of the period which a custody order may not exceed serves only to bring an end to that order; the jurisdiction of the court over the person still exists. The jurisdiction which the court gained by an allegation and an adjudication that a child is delinquent remains inviolate, completely unaffected by the lapse of a custody order. In short, the jurisdiction of the court is not terminated because the custody order terminated upon the passage of three years.[9] Therefore, in this case, the sole effect of the termination of the custody order on 9 January 1978 by the lapse of three years from the time it was entered [10] was to put custody of Johanna in limbo. She was then an adult,[11] but was under the age of 21 years, so that her rights as an adult were subject to the jurisdiction of the court, and that jurisdiction, as provided by § 3-806 (a), continues until she becomes 21.

(3) Order the child, parents, guardian, or custodian of the child to participate in rehabilitative services that are in the best interest of the child and the family.

9. Maryland Rule 920 provides:

A final order of termination of the proceedings may, in the court's discretion, be entered on the court's own motion at any time after the court's jurisdiction over the respondent is terminated, or upon the recommendation of the appropriate governmental or social agency exercising supervision over the respondent.

No final order of termination of the juvenile proceedings was entered in this case, nor was one recommended by the agency exercising supervision over Johanna.

10. We proceed under Johanna's suggestion that the order by which she was first placed in Elan One was "entered" 9 January 1975.

11. Johanna attained the age of 18 years on 30 August 1977. Code (1957, 1976 Repl. Vol.) art. 1, § 24 (a) prescribes:

Except as otherwise specifically provided by statute, a person eighteen years of age or more is an adult for all purposes whatsoever and has the same legal capacity, rights, powers, privileges, duties, liabilities, and responsibilities as prior to July 1, 1973, persons had at twenty-one years of age, and the "age of majority" is hereby declared to be eighteen years.

It is quite apparent, therefore, that the court had the power on 26 July 1978 to commit Johanna to the custody of the Department for placement in Elan One. The court had jurisdiction over her. The question of custody arose in connection with a matter which was within the court's exclusive jurisdiction under § 3-804, and its determination was necessary to make an appropriate disposition. Commitment to the Department was expressly permitted by § 3-820 (b) (2). The placement in Elan One was not prohibited by § 3-823.[12]

We see nothing in the provision of § 3-825 (b) granting the court authority to renew an order for custody which requires that the renewal be within three years from the entry of the original order. The purpose of the three year limitation on a custody order is patently to preclude a person's remaining in custody for an indefinite time without the opportunity to have the need for commitment reconsidered by the court. The section establishes three years as a proper time for such reconsideration. It does not impose a sanction and most certainly does not divest the court of jurisdiction. It is immaterial whether the second placement of Johanna at Elan One be considered a renewal of the order originally placing her in that facility or whether it be deemed a new disposition of her, albeit it is a facility which had previously been engaged in efforts to rehabilitate her. The order of 26 July 1978 was not only come by under prescribed procedures, its issuance was within the jurisdiction of the court.

Johanna moved this Court to strike the Appendix to her brief in light of an agreed statement of facts included in the State's brief. The motion is granted.

> *Judgment affirmed; appellant's motion to strike Appendix to her brief granted; costs to be paid by appellant.*

12. There is no claim on this appeal that the procedural requirements with respect to the custody order of 26 July 1978 were in any way violated. A disposition hearing was duly held, § 3-820, at which Johanna had the assistance of counsel, § 3-821. The judge announced in open court and on the record the reasons why placement outside the home was necessary. Md. Rule 915 (b). There is no suggestion that Johanna's return to Elan One was not entirely proper in the circumstances, to provide "a program of treatment, training, and rehabilitation best suited to [her] physical, mental, and moral welfare ... consistent with the public interest."