483 A.2d 39

In re ARLENE G., Rhonda G., Teresa G.

No. 6, Sept. Term, 1984.

Court of Appeals of Maryland.

Nov. 1, 1984.

356

Alan M. Wright, Asst. County Atty., Rockville (Paul A. McGuckian, County Atty., and Robert G. Tobin, Jr., Deputy County Atty., Rockville, on brief), for appellant.

Michael R. Malloy, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

PER CURIAM.

Involved in this appeal is the present and future welfare of three sisters, Arlene G., Rhonda G., and Teresa G., now seven, five, and four years of age respectively. Some four years ago, in proceedings in the District Court of Maryland, Sixth District, Juvenile Division (the Juvenile Court), Arlene and Rhonda were determined to be children in need of assistance. They were put under the jurisdiction of the Juvenile Court and committed to the Montgomery County Department of Social Services (the Agency) to be placed in the home of the children's paternal aunt and uncle, who were generally known as the children's "grandparents." Subsequently, the Juvenile Court determined that Teresa was also a child in need of assistance. The court put her under its jurisdiction and committed her to the Agency to be placed in one of its foster homes.

In March 1983 the children were brought before the Circuit Court for Montgomery County sitting in equity (the Equity Court) on the petition of the Agency. The Agency sought the guardianship of the children and the termination of the rights of their parents. After trial, the Equity Court, by its orders, appointed the Director of the Agency (the Director) as guardian of each child "with the right to consent to adoption or long-term care short of adoption."

Several months after the appointment of the Director as the guardian of the children, the Agency filed a motion in the Juvenile Court requesting that the Juvenile Court "rescind its present orders and terminate its jurisdiction" over the children. In a Status Report the Agency declared that its plan was to place the children for adoption, as "[i]t is now essential to make a permanent plan for these children which will provide for their future stability." The Agency spelled out its concerns regarding Arlene and Rhonda remaining on a permanent basis with the grandparents. Furthermore, the Agency averred, the grandparents were "resistive to [its] moving the children" and were attempting to thwart plans for the adoption of Arlene and Rhonda, relying

on prior Juvenile Court orders awarding custody to the grandparents. "It will be impossible," the Agency asserted, "to prepare and move Arlene and Rhonda into an approved adoptive family if the present Juvenile Court orders remain in effect."

The Juvenile Court held a review hearing. It determined that "the best interest and welfare of the minor children would be served by continued placement" of Arlene and Rhonda in the home of their paternal grandparents and by the continued placement of Teresa in foster care. On September 14, 1983, it ordered that each child "be and hereby is continued under the jurisdiction of the [Juvenile] Court with the commitment to the [Agency] being REAF-FIRMED for continued placement," as to Arlene and Rhonda in the home of their grandparents, and as to Teresa, in foster care. It further ordered that each child be referred to the Court Diagnostic Team for an evaluation and that "these proceedings be continued pending further Orders of the Court." The Agency noted an appeal "from the Order of the [Judge] delivered in Court on September 14, 1983, denying the Motion of the [Agency] to terminate Court jurisdiction." We granted certiorari on our own motion prior to consideration of the appeal by the Court of Special Appeals.

The sole issue before us presents a clear-cut question of law:

What is the effect on the jurisdiction of the Juvenile Court of the orders of the Equity Court appointing the Director of the Agency as guardian of the children with right to consent to adoption or long term care?

It is the Agency's position that by reason of its appointment as guardian of the children they were no longer children in need of assistance. Therefore, it argues, the Juvenile Court lacks any basis for continued jurisdiction over the children, and thus erred in refusing to terminate its jurisdiction.

*The Jurisdiction and Authority of the Juvenile Court*

1) The Juvenile Court has exclusive original jurisdiction over a child alleged to be in need of assistance. Maryland Code (1984 Repl.Vol., 1984 Supp.) § 3–804(a) of the Courts and Judicial Proceedings Article.[1]

2) "If the [Juvenile Court] obtains jurisdiction over a child, that jurisdiction continues until that person reaches 21 years of age unless terminated sooner." § 3–806(a) of the Courts Article.

(a) Ordinarily the retention of jurisdiction is within the discretion of the Juvenile Court. § 3–806(c) of the Courts Article.

(b) Jurisdiction and custody are separate and distinct. The jurisdiction obtained is continuous, completely unaffected by the lapse of any custody order. *In re Joanna F.*, 284 Md. 643, 651, 399 A.2d 245 (1979).

(c) The Juvenile Court may place the child in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate, or commit the child to the custody or under the guardianship of the Agency. § 3–820(c)(1) and (2) of the Courts Article.

*The Jurisdiction and Authority of the Equity Court*

1) The Equity Court has jurisdiction over the adoption of a child. Maryland Code (1984) § 1–201(a)(1) of the Family Law Article.[2]

---

1. Section 3–801(e) of the Courts Article provides:

    A child in need of assistance is a child who requires the assistance of a juvenile court because

    (1) He ... is not receiving ordinary and proper care and attention, and

    (2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems....

    *See Bowling v. State*, 298 Md. 396, 398, n. 1, 470 A.2d 797 (1984).

2. The jurisdiction of an equity court over the adoption of a child was formerly set out in §§ 3–601 and 3–602 of the Courts Article. The sections were repealed by Acts 1984, ch. 296, § 1, effective 1 October

(a) The jurisdiction over adoption does not extend to a juvenile court. A juvenile court is not empowered to deal with the transcendent problem of severing all legal ties and providing for the adoption of a child by others. *In re Darius A.*, 47 Md.App. 232, 235–236, 422 A.2d 71 (1980).

2) The Equity Court has jurisdiction over the custody or guardianship of a child. § 1–201(a)(5) of the Family Law Article.

(a) In exercising its jurisdiction over the custody or guardianship of a child, the Equity Court may

(i) direct who shall have the custody or guardianship of a child, pendente lite or permanently, and from time to time, set aside or modify its decree or order concerning the child. § 1–201(b)(1) and (4) of the Family Law Article.

3) The jurisdiction and authority of the Equity Court as to a child does not take away or impair the jurisdiction of a juvenile court with respect to the custody or guardianship of the child. § 1–201(c) of the Family Law Article.

4) The Equity Court may grant a decree of adoption or a decree of guardianship, without the consent of a natural parent, if the court finds by clear and convincing evidence that it is in the best interest of the child to terminate the natural parents' rights as to that child and that in a prior juvenile proceeding, the child has been adjudicated to be a child in need of assistance. § 5–313(a)(2) of the Family Law Article.

*The Authority of the Agency*

1) A petition for a decree of adoption may be preceded by a petition for guardianship of the child; only the executive head of a child placement agency may file a petition for the agency to be granted guardianship. § 5–317(a) and (b) of the Family Law Article.

---

1984, and now appear, without substantive change, in § 1–201 of the Family Law Article.

2) A child placement agency that was granted guardianship may consent to long term care short of adoption of the child if approved by the Equity Court. § 5–318 of the Family Law Article.

▮▮▮▮▮ It is clear on the face of the statutes that the jurisdiction over the children obtained by the Juvenile Court was not terminated upon the appointment by the Equity Court of the Agency as guardian. The effect of a guardianship decree is set out in § 5–317(e) of the Family Law Article and such a result is neither declared nor implied therein.[3] Under the law the retention of the jurisdiction of the Juvenile Court is ordinarily within its sound discretion until the child reaches 21 years of age.[4] *See* § 3–806(a) of the Courts Article. We emphasize that the legislature has expressly provided that the jurisdiction of the Equity Court over adoption and custody or guardianship of a child "does not take away or impair the jurisdiction of a juvenile court ... with respect to the custody [or] guardianship ... of a child." *See* § 1–201(c) of the Family Law Article. In short, as to a child in need of assistance, the jurisdiction of the Juvenile Court regarding custody generally prevails over the jurisdiction of the Equity Court regarding custody. The legislature clearly intended that there be no inconsistency between the jurisdiction and authority it bestowed on a Juvenile Court with respect to a child and the jurisdiction and authority it bestowed on an Equity Court with respect to a child. The various statutes are harmonious.

We conclude that the orders of the Equity Court appointing the Director as guardian of the children had no effect whatsoever on the jurisdiction of the Juvenile Court. The

---

**3.** Section 5–317(e) declares that a decree of guardianship (1) terminates the natural parents' rights, duties and obligations toward the child; (2) ordinarily eliminates the need to give notice to the natural parents of the child of a petition for adoption; and (3) eliminates the need for a further consent by the natural parents to an adoption.

**4.** It appears that a final decree of adoption would terminate the jurisdiction of the Juvenile Court. *See* § 5–308(b) of the Family Law Article.

appointment of the Director as guardian by the Equity Court did not operate as a matter of law to terminate or to compel the termination of the jurisdiction of the Juvenile Court.[5] As the Juvenile Court observed, the mere appointment of a guardian, albeit the Agency, does not mean that the children are not at that time, or may not in the future be, children in need of assistance. The Juvenile Court obtained jurisdiction as to the custody of the children upon the allegation and determination that they were in need of assistance. Its jurisdiction was continuous in its discretion, unimpaired by the guardianship orders of the Equity Court.

We hold that the Juvenile Court did not err in refusing to terminate its jurisdiction over the children.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE MONTGOMERY COUNTY DEPARTMENT OF SOCIAL SERVICES.

───

5. The retention or termination of the jurisdiction of the Juvenile Court was, in the circumstances here, a matter within its discretion. After a review hearing the Court was not persuaded that it was in the best interests of the children to place them elsewhere or to terminate the Court's jurisdiction. The propriety of the determination of the Juvenile Court as an exercise of its discretion is not before us.