OPINION OF THE COURT
Francis A. Affronti, J.
The Monroe County Department of Social Services commenced this Family Court Act article 10 proceeding, alleging that the above children were abused and neglected (Family Ct Act § 1012).
Respondent, Frances L., previously admitted certain allegations in the petition (Family Ct Act § 1051 [a]), whereupon the court made findings that the children were neglected children. (Family Ct Act § 1012 [¶] [i] [B].)
A fact-finding hearing was conducted as to respondent, Melvin L., relative to the allegations against him including those *1054 involving the commission of certain sexual acts (Family Ct Act § 1012 [e] [iii]), upon his biological daughter, Ruth L., born on June 23, 1979.
The court has both personal and subject matter jurisdiction over the respondent who was present during the hearing represented by counsel.
Terry B., age 14, respondent’s “stepson”, presented sworn testimony of the events which allegedly occurred while residing with his mother (respondent Frances L.) and the respondent, along with other siblings ranging in age from 4 to 11. Late one evening, during the 1983 Thanksgiving holiday, and after retiring for the night, Terry heard a squeaking noise emanating from respondent’s bed and observed the latter physically moving “up and down.” At that time, he related that his stepsister was in respondent’s bed and upon asking what was going on, the latter replied in substance, “nothing, just go back to bed.”
A few weeks later, during the Christmas holidays, Terry was awakened by noises and activity, and saw the respondent engaging in similar up and down movements in his bed. Again, upon inquiry, respondent said to go back to sleep and that it “won’t happen again.” Although the youngster testified to the presence of another figure in respondent’s bed on each occasion, and having further observed a child’s “arm”, which he steadfastly believed to be Ruth’s, he was unable to positively identify her. During his testimony, Terry also declared that, on prior occasions, he had seen another stepsister, Roberta, age three, in respondent’s bed.
A police officer investigating the incidents recounted certain admissions made by respondent while in police custody, and the child protective worker who interviewed Ruth utilized anatomically correct dolls which aided her investigatory procedure.
The child’s conversations with the caseworker established episodes of sexual contact and touching upon portions of her body, and she used such words as “tutu” while referring to the male and female “dolls”. She further attempted to describe to the caseworker, as best she could, in view of her tender years, the physical actions of the male perpetrator, and the approximate time and location of the abusive acts. The record is extensive in this regard, while further encompassing other aspects of petitioner’s investigation. Additionally, respondent made inculpatory admissions to the caseworker, acknowledging sexual contact with Ruth on three separate occasions during the approximate time periods previously alluded to, and that his “stepson” had awakened and inquired as to the goings-on.
*1055 During cross-examination of petitioner’s witnesses, respondent requested an order of this court directing that he be given transcripts of the Grand Jury testimony of Terry B. and the investigating police officer, each of whom had previously testified before the Grand Jury relating to a concurrent criminal proceeding arising from the acts which were the subject of this trial. Respondent contended that the transcripts would allow for thorough cross-examination and be beneficial for impeachment purposes. Decision was reserved on the application, cross-examination was completed, and respondent was allowed to recall those witnesses at a later time pending decision on the motion.
An adjournment was granted and, thereafter, upon a review of the written pleadings submitted by all counsel in support of, and in opposition to the motion, a decision was rendered, as immediately addressed.
It is firmly settled that any determination of this issue rests solely in the discretion of the trial court. In exercising such discretion, however, the various competing interests must be balanced. Relying upon People v Rosario (9 NY2d 286), and its progeny, it is universally conceded that a witness may be impeached in any subsequent trial, civil or criminal, by self-contradictory testimony, and in criminal and delinquency actions, existing statute mandates Grand Jury disclosure (CPL 240.45; Family Ct Act § 331.4). A “ ‘right sense of justice’ ” entitles the defense to examine prior statements of witnesses so long as those statements relate to the witnesses’ testimony at trial and “fundamental requirements of a fair trial mandate that the Grand Jury testimony of such witnesses be made available”. (See, Matter of Gold v Quinones, 37 AD2d 618.) In Gold (supra), the court held that Family Court cannot order the District Attorney to produce the Grand Jury minutes but that application should be made to the court having jurisdiction over such testimony. In Matter of Wolfe v Berman (40 AD2d 869), the Family Court ordered the Corporation Counsel to apply for production of Grand Jury minutes and that such direction was a proper exercise of the court’s power in a proceeding over which it had jurisdiction. Only the court in charge of the minutes is authorized to release statements from the secrecy requirements of the Criminal Procedure Law. (See, People v Quigley, 59 AD2d 825.)
This court referred to innumerable precedent granting the production of such testimony, in a wide variety of criminal, quasi-criminal (delinquency) and civil proceedings (see also, Matter of George V., 100 AD2d 594; Matter of Bertha K., 58 AD2d *1056 811; Matter of John G., 91 AD2d 685), but was unable, through its research, to uncover any legal guidance directly controlling an abuse or neglect proceeding, as governed by Family Court Act article 10. The nearest facsimile to the case at bar occurred in Matter of Herbert F. (56 AD2d 601), wherein the court though not addressing the Grand Jury issue, asserted that Family Court’s curtailment of the examination of witnesses constituted a denial of due process in violation of Family Court Act § 1011. Respondent’s instant application, therefore, appeared to present one of first impression in this State encountering legal queries not yet explored, much less answered.
In pondering the legislative intent of the cited statutes, the interpretation of the reported decisions, and weighing the prevailing public policy considerations, and respondent’s fundamental safeguards, this court determined that the Grand Jury testimony was indeed material, relevant, and potentially valuable for cross-examination purposes, and that its production would further serve the purposes of Family Court Act § 1011.
The District Attorney and/or attorney for petitioner was subsequently ordered to immediately apply to the Monroe County Court, having jurisdiction over the Grand Jury, to release said testimony to this court for purposes of conducting an “in-camera” inspection thereof. In compliance with the order, the transcripts were supplied, and upon the court’s inspection and review it was determined that the data therein had previously been elicited during the witnesses’ trial testimony, and that such evidence was merely cumulative. Physical delivery of the stenographic Grand Jury testimony to respondent was, consequently, denied.
At this juncture, the parties rested, with respondent failing to present any witnesses of his behalf.
Respondent now seeks a dismissal of the petition on several grounds, including a lack of sufficient corroboration of the children’s hearsay statements, and that petitioner failed to prove that the sexual acts were intentional, so as to satisfy the requirements of the New York State Penal Law.
In opposition, the Law Guardian argues that intent is not an element and need not be proved in Family Court sexual abuse proceedings. In support thereof, reference is had to several decisions which, after a careful review, this court holds do not advocate or maintain such a position. (See, People v Smith, 62 NY2d 306; Matter of Linda C., 86 AD2d 356; Matter of Katherine C., 122 Misc 2d 276.) Nor has any existing precedent directly addressing or analyzing such dispute been discovered. Again, *1057 the court is called upon to sail uncharted waters and encroach upon virgin territory in deciding an issue which bears significantly upon the ultimate outcome of this proceeding.
For the reasons following, it is the determination that intent must be proved as mandated by statute (Penal Law, arts 15, 130), and is an essential element to sustain a finding of child abuse in a Family Court Act article 10 proceeding. Abuse can only be predicated upon those sex offenses defined in the Penal Law (Family Ct Act § 1012 [e] [iii]), all of which require intent by their very nature and character. By strictly construing, which the court is obliged to do, the applicable provisions of the Family Court Act and Penal Law, and in the absence of jurisprudential edicts to the contrary, the legislative intent of the ruling statutes is satisfied rather than frustrated.
Family Court Act article 10 “is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being [and] to provide a due process of law for determining when the state, through its family court, may intervene * * * on behalf of a child so that his needs are properly met” (Family Ct Act § 1011).
It is well settled that proceedings seeking the protection of children from abuse and neglect are civil in nature and clearly distinguishable in purpose from criminal actions (see, Matter of Diane B., 96 Misc 2d 798). However, where sexual abuse is alleged and contested in the Family Court, that intent required to be proved in criminal proceedings is a prerequisite to an abuse finding and no less than full compliance must be exacted.
It is to be noted that the single-most essential evidentiary exhibit presented during trial is represented by respondent’s written statement given while in police custody, and after being advised of his constitutional rights. The statement, read in conjunction with all the probative and corroborative evidence presented, commands a finding that respondent’s acts and conduct were intentional and not accidental, and therefore, fall within the ambit of the criminal statute (Penal Law, arts 15, 130). To bolster his contention that his conduct was accidental, he speaks of consuming three quarts of beer prior to the first incident, yet he recalls the approximate time he fell asleep, that Ruth was in his bed, that her 14-year-old stepbrother awakened and made inquiries, that respondent told him to “shut up and go back to sleep”, that he was aware of being “on top” of her and rubbing against her, and that he engaged in specific acts while using coarse and indelicate verbiage. Importantly, he directed *1058 the stepbrother to go back to sleep and. that it would not happen again. The written commentary also details a subsequent incident, when respondent was again in bed with the child and which only serves to reinforce this court’s belief as to the mental state of awareness exhibited by him during his engagement in the acts of sexual aggrandizement. The written inculpatory statement was obtained several months after the incidents occurred, at which time respondent’s recollection for preciseness and specificity was vivid, clear and unambiguous.
A fair and reasonable interpretation of the four corners of the statement, including the repetitious nature of the conduct, rationally leads to the conclusion that respondent’s “conscious objective” was “to cause” such acts or to “engage in such conduct” the nature of which he was aware. (Penal Law § 15.05 [1].) A contrary finding would be ludicrous at best and in total defiance and in complete disregard of the proffered evidence. It is likewise apparent that such acts were directed toward the sole end of “gratifying [his] sexual desire” (Penal Law § 130.00 [3]). It is further determined that the written statement is buttressed, in many respects, by the unwavering testimony of Terry B., who credibly, saliently and with astute acumen, accurately represented the happenings.
His elaborate recitation, coupled with Ruth’s out-of-court statements, the voluminous recorded independent evidence, and the oral and written admissions of respondent, solidify the abusive acts and confer the requisite corroboration. (Family Ct Act § 1046 [a] [vi]; see also, Matter of Cindy B., 122 Misc 2d 395.) Respondent’s reliance upon a prior decision of this court is misplaced, both factually and legally, is not analogous to the case at bar, and not applicable on the issue of corroboration. (See, Matter of Nicole S., 123 Misc 2d 364.)
Child protective intervention should be limited to cases supported by substantial evidence and failing to give adequate warning to individuals who engage in atrocious, outrageous, and offensive behavior will serve only to augment the physical and emotional suffering of incalculable defenseless children. Any willful omission in the protection of children by individuals legally responsible for their care necessitates the intervention of society, through the State. (See, Matter of Maureen G., 103 Misc 2d 109.)
Petitioner’s proof was not contradicted or refuted, and the i court finds by a fair preponderance of the probative evidence that the respondent committed sexual offenses against Ruth L., and that she is an abused child (Family Ct Act § 1012 [e] [iii]). It *1059 is the further finding that the sexual offenses, as defined in the Penal Law, constituted sexual abuse, first degree (Penal Law § 130.65 [3]), and sexual abuse, second degree (Penal Law § 130.60 [2]).
Furthermore, based upon the finding of abuse above, and pursuant to Family Court Act § 1046 (a) (i), and upon the proof established at trial, the children, Roberta L., Melvin L., Terry B. and John B., are neglected children in that both their physical and emotional condition are in imminent danger of becoming impaired as a result of the failure of the respondent to exercise a minimum degree of care in providing them with proper supervision and guardianship (Family Ct Act § 1012 [¶] [i] [B]), thereby requiring the aid of the court.
A dispositional hearing shall occur on January 22, 1985, at 9:30 a.m. Petitioner shall submit a dispositional plan to the court and counsel within 72 hours prior to the above hearing date and the final order to incorporate the prior finding and dispositional plan implemented as to respondent, Frances L.
Pending disposition any and all existing orders shall continue in full force and effect.