527 A.2d 42
**In re VALERIE H.**

**No. 3 (Adv.), Sept. Term, 1987.**

Court of Appeals of Maryland.

June 29, 1987.

114

Mitchell Mirviss, Baltimore, for appellant.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, § 3A, he also participated in the decision and the adoption of this opinion.

MURPHY, Chief Judge.

The question presented in this case is whether a juvenile court order discharging a local department of social services from further custodial responsibility over a child also serves to terminate the juvenile court's continuing jurisdiction over that child.

## I

When Valerie H. was five years old, the Department of Social Services for Baltimore City (DSS) petitioned the Circuit Court for Baltimore City, sitting as a juvenile court, to have her adjudged a "child in need of assistance" (CINA).[1] DSS alleged that Valerie's father's absence and her mother's narcotic addiction created an inadequate home environment for the neglected child. The juvenile court (Hammerman, J.) found Valerie to be a CINA and committed her care and custody to DSS on September 7, 1973, subject to its further order.

Eight years later, in October of 1982, DSS recommended that the juvenile court rescind the order of commitment; Valerie had been returned to her mother's care the previous year, and DSS believed her mother was providing acceptable care. The juvenile court (Allen, J.) accepted DSS's request and ordered on November 10, 1982, that

"the Order committing the Respondent [Valerie] to said Agency [the Baltimore City DSS] be, and the same is hereby rescinded, and said Agency is discharged from

---

1. A CINA is
   "a child who requires the assistance of the court because
   (1) He is mentally handicapped or is not receiving ordinary and proper care and attention, and
   (2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems provided, however, a child shall not be deemed to be in need of assistance for the sole reason he is being furnished nonmedical remedial care and treatment recognized by State law."
   Maryland Code (1984 Repl.Vol.), § 3–801(e) of the Courts and Judicial Proceedings Article.

further responsibility for the care, custody, and/or super-
vision of the Respondent."

Valerie was returned to foster care placement by DSS
sometime in February of 1985 for reasons not disclosed in
the record. DSS, however, did not petition the court for
recommitment until over a year later in May of 1986. In
the interim, not only had Valerie become 18 years old and
thus ineligible for consideration as a CINA under a new
petition, but DSS had exceeded its own six-month limit on
voluntary foster care placements.[2] Valerie could therefore
continue receiving foster care services only if she were
recommitted to DSS's custody under the original CINA
adjudication by the juvenile court.[3]

DSS's request for a hearing to review Valerie's foster
care placement was denied by the juvenile master on May
20, 1986, on the ground that "[t]he effect of the [juvenile
court's] rescission order was to cancel the commitment
order and to close the original case." The master's recom-
mendation was approved by the juvenile court (Mitchell, J.)
on July 21, 1986. Although the court agreed with DSS's
and Valerie's contention that the rescission language of
Judge Allen's 1982 order did not, of itself, terminate the
juvenile court's jurisdiction, it stated:

"The further language of Judge Allen's Order accom-
plished that. After the committing Order was rescinded,

---

**2.** To be adjudged a CINA, one must first be a "child," defined in
§ 3–801(d) as "a person under the age of 18 years." COMAR
§ 07.02.11.06(B) (1977) similarly provides that "[f]oster care may not
be initiated for a child who is 18 years old or older."

**3.** COMAR § 07.02.11.13(F) states:
"A child who is between 18 and 21 years old, for whom a local
department has continuing responsibility, may be placed in a semi-
independent living arrangement upon approval of the living ar-
rangement by the local department. An eligible child would be one
for whom there is no suitable resource with relatives or within the
Department's foster care program. Acceptable independent living
arrangements may be half-way houses, business lodges or other
arrangements which meet the needs of an individual child. The
rate paid for semi-independent living arrangements will be based on
actual cost of the residence up to $447 a month."

the agency was discharged from further care responsibilities for the Respondent.... [R]eferring to the dictionary, discharge means to free or end the effect of a legal order. The Court's orders then in use contained discharge rather than terminate when referring to the cessation of jurisdiction. The net effect is the same."

Valerie appealed to the Court of Special Appeals. We granted certiorari on our own motion to consider the important question raised in the case.

## II

It is, of course, a basic premise that a court obtaining jurisdiction of the person and subject matter retains it until final disposition of the case. *See Eggleston v. State,* 209 Md. 504, 511, 121 A.2d 698 (1956); *Hunter v. Warden,* 198 Md. 655, 656, 80 A.2d 611 (1951). The Juvenile Causes Act, in § 3–804(a) of the Article provides that the juvenile court "has exclusive original jurisdiction over a child alleged to be delinquent, in need of supervision, in need of assistance or who has received a citation for a violation." Although exclusive original jurisdiction may be waived by the juvenile court under specific circumstances, it is presumed that the juvenile court's jurisdiction continues: "until that person reaches 21 years of age unless terminated sooner." § 3–806(a). Under this Section, jurisdiction, once acquired, terminates (with some exceptions not here pertinent) only if the juvenile court so orders.

The Juvenile Causes Act does not specify the precise language necessary to terminate the juvenile court's jurisdiction. However, the Maryland Rules contain approved "Forms for Juvenile Causes," one of which, Form 920, sets forth an appropriate order of termination of jurisdiction under Md.Rule 920 [4], which is as follows:

---

[4] Md.Rule 920 (1987) states:
"A final order of termination of the proceedings may, in the court's discretion, be entered on the court's own motion at any time after the court's jurisdiction over the respondent is terminated, or upon

FINAL ORDER OF TERMINATION

ORDERED, this ............... day of ..............., 19..., by the .............. Court for .............. City/County, Maryland, sitting as a Juvenile Court, that this proceeding be, and it hereby is, terminated; and it is further

ORDERED, that a copy of this Order be served on the Respondent and on .....................

Recommended: ..........................
Master for Juvenile Causes

.............................
Judge

In comparing the above language with that of the 1982 order issued by Judge Allen, which Judge Mitchell construed to have terminated juvenile court jurisdiction, we note initially that Form 920 uses the word "terminate," in keeping with the language of §§ 3–806(a) and 3–804(a) of the Courts Article and Md.Rule 920. The 1982 order, on the other hand, uses the term "discharge." According to Black's Law Dictionary (5th ed. 1979), "termination" refers to an "end in time or existence," "cessation," or "conclusion," (at p. 1319), whereas "discharge" means "to release," "annul," "extinguish an obligation" (at p. 416). Thus, given the presumption of a juvenile court's continuing jurisdiction, we do not view "discharge" in this context as meaning a cessation of the entire panoply of petitions that could be filed in juvenile court concerning the care and custody of a child adjudged a CINA. Moreover, the language of the 1982 order specifically refers to discharging the "agency ... from further responsibility for the care, custody, and/or supervision of the Respondent"; it does not, directly or indirectly, suggest a termination of the juvenile court's jurisdiction. Consequently, we hold that the 1982 order did not terminate the juvenile court's jurisdiction over Valerie.

---

the recommendation of the appropriate governmental or social agency exercising supervision over the respondent."

We have previously considered cases involving the termination of juvenile court jurisdiction. *In re Johanna F.*, 284 Md. 643, 399 A.2d 245 (1979), concerned a delinquent child committed for detention in November of 1972. Between 1972 and 1978, Johanna absconded from various juvenile facilities at which she had been placed. A subsequent court order in July of 1978 committed her to the custody of the Juvenile Services Administration for placement at a facility particularly suited to her needs. Johanna, however, contended that the juvenile court lacked jurisdiction over her in 1978. She argued that, under § 3–825(b)[5], the original order of 1972 had lapsed three years from the date it was entered; the expiration of the custody order thus allegedly divested the juvenile court of its jurisdiction over her. We there held:

"It is clear that jurisdiction and custody are separate and distinct. The statutes and rules regarding them are unambiguous and in no way conflicting. Section 3–825(b) only qualifies the court's power regarding custody. The running of the period which a custody order may not exceed serves only to bring an end to that order; the jurisdiction of the court over the person still exists. The jurisdiction which the court gained by an allegation and an adjudication that a child is delinquent remains inviolate, completely unaffected by the lapse of a custody order. In short, the jurisdiction of the court is not terminated because the custody order terminated upon the passage of three years." (footnote omitted).

*Id.* at 651, 399 A.2d 245.

More recently, in *In re Arlene G.*, 301 Md. 355, 483 A.2d 39 (1984), we held that the juvenile court's jurisdiction over

---

**5.** Section 3–825(b) (1984 Repl.Vol.) states:
"an order providing for custody of a child adjudicated delinquent or in need of supervision may not exceed three years from the date entered. However, the court may renew the order upon its own motion, or pursuant to a petition filed by the individual, institution, or agency having legal custody after notice and hearing as prescribed by the Maryland Rules."

children adjudged CINAS was not terminated when another court appointed the director of a child placement agency as the guardian of the children. We stated:

> "As the Juvenile Court observed, the mere appointment of a guardian, albeit the Agency, does not mean that the children are not at that time, or may not in the future be, children in need of assistance. The Juvenile Court obtained jurisdiction as to the custody of the children upon the allegation and determination that they were in need of assistance. Its jurisdiction was continuous in its discretion, unimpaired by the guardianship orders of the Equity Court."

*Id.* at 363, 483 A.2d 39.[6]

Finally, we note that a fundamental purpose of the Juvenile Causes Act is to "provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this [Act]...." § 3–802(a)(1). Terminating jurisdiction over a CINA, absent an express indication from the court order that such an effect was intended, hardly accomplishes that purpose. Therefore, in view of the presumption of continuing jurisdiction, and of the express instruction of § 3–802(b) that the Act "shall be liberally construed to effectuate ... [its] purposes," we conclude that the effect of the 1982 order was merely to relieve DSS from further responsibility at that time for Valerie's custody. The order did not terminate the juvenile court's jurisdiction.

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE DEPARTMENT OF SOCIAL SERVICES FOR BALTIMORE CITY.

---

6. In addition to expiration of a custody order and appointment of a guardian, acts insufficient to end juvenile court jurisdiction include marriage of a delinquent or a dependent child. *See generally* the annotation at 14 A.L.R.2d 336 and cases cited therein.