530 A.2d 771

**In re CHRISTIANA G., James G., Kenneth G. and Carlotta G.**

**No. 1492, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Sept. 8, 1987.

Certiorari Denied Dec. 28, 1987.

444

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellants.

Sherry L. Kendall, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief) Baltimore, for appellee.

Argued Before KARWACKI, WENNER and POLLITT, JJ.

KARWACKI, Judge.

In this appeal, Karla G., the mother of four children, contends that the District Court of Maryland for Montgomery County (Tracey, J.) sitting as a juvenile court, abused its discretion in ordering that three of those children be continued in foster care. We disagree and affirm the judgment of that court.

Appellant and Eckel G., who married in April of 1985, have lived together for approximately 12 years. They are the parents of four children: Carlotta (date of birth—September 23, 1976),[1] Christiana (date of birth—February 17, 1978), James (date of birth—July 18, 1979), and Kenneth (date of birth—November 11, 1980).

On March 12, 1986, appellant left her marital home with her children when she learned that Carlotta had revealed at school that she had been sexually abused by Eckel G. She and the children were granted sanctuary at the Montgomery County Crisis Center when appellant reported to the Montgomery County Department of Social Services (DSS) that she feared reprisals by her husband against her and their children because of Carlotta's allegations against him. On March 13, 1986, while at the Crisis Center, appellant became severely depressed and threatened suicide. As a consequence, she was admitted to the psychiatric unit of Suburban Hospital. After a two week stay, the appellant left the hospital against medical advice.

On March 17, 1986, DSS filed petitions with the court alleging that the appellant's daughters and sons were children in need of assistance (CINA) as defined in Md. Code (1984 Repl. Vol.,1986 Supp.), § 3–801(e) of the Courts and Judicial Proceedings Article[2] and requesting the court to order shelter care for the children pending an adjudicatory hearing on the petition. After a hearing the court commit-

---

1. The appellant has not appealed from that part of the order continuing the foster care of Carlotta.

2. All further statutory references will be to this Article of the Code.

ted the children to DSS for shelter care placement pursuant to § 3–815.

After an adjudicatory hearing on May 21, 1986, the court concluded that the children were CINA. The court found from the evidence at that hearing that Carlotta had been sexually abused by her father since she was six years old. The court continued the children's commitment to DSS for shelter care pending disposition pursuant to § 3–820.

After a hearing conducted on July 14, 1986, the court made its dispositions. Foster care of all four children was continued, and the appellant and her husband were given reasonable visitation privileges under the supervision of DSS. At the request of the appellant, who had returned to live with her husband on June 4, 1986, the court reviewed the commitment of the children at hearings conducted on September 2, 1986 and November 5, 1986. When the court declined to modify the commitment, this appeal ensued.

■ Section 3–820 provides in pertinent part:

(b) The priorities in making a disposition are the public safety and a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest.

(c)(1) In making a disposition on a petition, the court may:

(i) Place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate;

(ii) Subject to the provisions of paragraph (2) of this subsection, commit the child to the custody or under the guardianship of the Juvenile Services Administration, a local department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency on terms that the court considers appropriate to meet the priorities set forth in subsection (b) of this section, including designation of the type of facility where the child is to be accommodated, until custody or guardi-

anship is terminated with approval of the court or as required under § 3–825 of this subtitle; or

(iii) Order the child, parents, guardian, or custodian of the child to participate in rehabilitative services that are in the best interest of the child and the family.

These options available to the judge in making a disposition must be considered *in pari materia* with the legislatively declared purpose of our juvenile code as set forth in § 3–802(a). *In re Jertrude O.*, 56 Md.App. 83, 97–99, 466 A.2d 885 (1983); *In re David K.*, 48 Md.App. 714, 720–21, 429 A.2d 313 (1981). That section states:

(a) The purposes of this subtitle are:

(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle.

§ 3–802(a).

Thus, the nature of the disposition is committed to the sound discretion of the court, *In re Johanna F.*, 284 Md. 643, 650, 399 A.2d 245 (1979); *In re Jessica M and Joseph M.*, 72 Md.App. 7, 527 A.2d 766, 768–69 (1987); but that discretion is limited where a child is removed from his

or her parents. That option should be exercised only "for the most urgent reasons." *In re Jertrude O., supra,* 56 Md.App. at 99, 466 A.2d 885. In the case *sub judice,* we hold that the court did not abuse its discretion in concluding that such reasons did exist.

The environment within the marital home of appellant and Eckel G. posed a serious threat to the physical and emotional health of their children. Despite the ample evidence of Eckel G.'s sexual abuse of Carlotta, he has denied any such conduct, and the appellant has supported him in that position. Indeed, appellant's mental illness was characterized by her treating psychiatrist as a personality disorder which centered around her abnormal dependency on her husband. This was further demonstrated by appellant's desire to continue living with Eckel G. even though he has physically abused her during the entire period of their relationship. Finally, evidence was adduced that Ann Sexton, the appellant's husband's paramour, who was also a distant member of the appellant's husband's family, lived in the home with the appellant and her husband. Ann Sexton's two children, fathered by Eckel G., also resided with the family and the appellant was often forced to care for these children although she resented their presence in the home. Some evidence was also presented that the appellant's children had witnessed their parents and Ann Sexton engaging in sexual activity, and that the children were aware that all three of the adults slept in the same bed.

The appellant was described as having no control over her children, and in fact the sole disciplinarian in the home was the appellant's husband. The discipline administered by the appellant's husband was described in the evaluation of the home environment prepared at the court's direction pursuant to § 3–818 as "inconsistent and, more often than not, involve[d] physical abuse."

In summary, the documented misconduct of Eckel G. created a chaotic environment in appellant's marital home and posed a continuing threat to the mental and physical health of all of their children. Appellant's need to continue

her relationship with her husband in such an environment is sufficient to disqualify her as their custodian. *Cf. In Interest of Y.P.*, 353 Pa.Super. 185, 509 A.2d 397 (1986); *Matter of Ruth L.*, 126 Misc.2d 1053, 484 N.Y.S.2d 767 (Fam.Ct. 1985); *Matter of Cindy B.*, 122 Misc.2d 395, 471 N.Y.S.2d 193 (Fam.Ct.1983); *In re Hawkins*, 76 Misc.2d 738, 351 N.Y.S.2d 574 (Fam.Ct.1974).

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.