702 A.2d 293

**Desirea CLAIBOURNE**

v.

**Richard A. WILLIS.**

**No. 116, Sept. Term, 1995.**

Court of Appeals of Maryland.

Nov. 13, 1997.

Robert J. Zarbin (Harvey A. Kirk, Michael T. Milne, Saiontz & Kirk, P.A., on brief), Baltimore, for Appellant.

No brief filed on behalf of Appellee.

Argued before MURPHY, C.J.,* and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI,* BELL and RAKER, JJ.

BELL, Judge.

This appeal arises from a most unusual set of circumstances. The appellant, Desirea Claibourne (Claibourne), and the appellee, Richard A. Willis (Willis), were involved in an automobile accident, which occurred at the intersection of Erdman and

---

* Now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and the adoption of this opinion.

Mannesota Avenues in Baltimore City and in which Claibourne was injured. When the accident occurred, Claibourne was insured by the Maryland Automobile Insurance Fund (MAIF) and, as was determined subsequently, Willis was uninsured. Claibourne retained counsel, Harvey A. Kirk (Kirk) of Saiontz & Kirk, P.A., to represent her in connection with the accident.

Having learned of Willis's insurance status, Claibourne made an uninsured motorist claim with her insurance carrier. She also filed suit against Willis in the Circuit Court for Baltimore City. Claibourne and MAIF settled her personal injury claim, and Claibourne entered into an Uninsured Motorist Release and Agreement, in which she agreed to discharge MAIF from all claims arising out of the February 1993 accident. She also agreed, in that release and agreement, "to take, through any representative designated by MAIF, such action as may be necessary or appropriate to recover the damages suffered by the undersigned ... from any person or persons, organization, association or corporation other than MAIF who or which may be legally liable therefor." Although, as evidenced by the space on the form for that purpose, the Uninsured Motorist Release and Agreement contemplated that MAIF note its acceptance on the form, MAIF never did so. Indeed, the form was never sent to MAIF.

Instead of sending the form to MAIF, Kirk, Claibourne's attorney, forwarded the Uninsured Motorist Release and Agreement, as executed by Claibourne, to Willis's attorney, Richard Seiden (Seiden) of the Law Offices of Lawrence M. Stahl, P.A. Moreover, he asked Seiden to see that "the proper Notice of Dismissal is filed with the court and all outstanding court costs have been paid." As requested, Seiden prepared an "Order of Dismissal" (the Order), which he sent to Kirk for execution. The Order provided as follows:

Mr. Clerk:

Please mark the file DISMISSED with prejudice with all open Court costs to be paid by the Defendant RICHARD A. WILLIS.

The Order contained signature lines for both Kirk and Seiden. Furthermore, it clearly reflected that Seiden represented Willis. Complying with Seiden's request, Kirk signed the Order and returned it to Seiden for filing with the circuit court. Seiden signed the Order, filed it, and paid all outstanding court costs. Consistent with the Order, the clerk noted on the docket, "Dismissed With Prejudice. Dismissal FD."

Subsequently, Claibourne received a letter from MAIF advising her that its right to proceed against Willis had been prejudiced by her dismissal with prejudice of her lawsuit against him.[1] Noting the subrogation clause in Claibourne's MAIF insurance policy,[2] it explained:

A Dismissal with prejudice eliminates all possibility of a further claim by you and, therefore, to any rights M.A.I.F. would have become subrogated to.

Thus, because MAIF was no longer able to be subrogated to Claibourne's rights against Willis, it made a demand on Claibourne for return of the amount it paid her in settlement.

Kirk wrote to Seiden, informing him of the MAIF letter and demand. He asked that Seiden "notify [him] within five days as to what arrangements you have made on behalf of your client to compensate MAIF for these subrogation rights."[3] In

---

**1.** The letter from MAIF read, in pertinent part:

It has come to our attention that after M.A.I.F. settled the Uninsured Motorist Claim, the lawsuit which you had brought against Richard A. Willis, the responsible uninsured party, was dismissed *with prejudice* by your duly authorized representative.

**2.** That clause provided:

Insuring Agreements; VI. Additional Conditions; II. Subrogation: In the event of any payment under this endorsement, the company shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**3.** It is curious that MAIF's letter is dated May 25, 1994, but Kirk's letter to Seiden is dated July 29, 1994.

that letter, Kirk also raised the possibility of "ask[ing] the court to strike the Order of Dismissal based upon the fraud and/or mistake in this matter." In his response, Seiden stated that he had done no more than comply with Kirk's requests. He also admonished Kirk for failing to review the Order and related documents before signing and sending them to his office, concluding that "Mr. Willis has already been put through the expense of defending this case and should not be faulted for your office's inadvertence or mistakes." [4]

Eventually, Kirk filed a Motion to Strike Order of Dismissal. Proceeding pursuant to Maryland Rule 2–535,[5] after reciting the facts, he asked the court to strike or amend the Order, concluding, "[t]hat the interest of fairness and justice required that the said Order of Dismissal be stricken by the Court or amend[ed] to exclude the term 'with prejudice.'" Shortly thereafter, Kirk requested a hearing on the matter. In his Answer to Motion to Strike Order of Dismissal, in addition to stating his opposition to the motion, Willis alleged that the motion was filed in bad faith and without substantial justification. Therefore, he asked the court to assess all costs, including attorney's fees against Claibourne. The court denied the

---

**4.** In the letter, Seiden pointed out that, inasmuch as the Order of Dismissal was forwarded to the Clerk on May 9, 1994, a copy of the forwarding letter being sent to Claibourne, and the MAIF letter is dated May 25, 1994, Kirk, pursuant to Maryland Rule 2–535(a), *see* n. 5 *infra,* could have filed, but did not do so, a motion to revise the Order of Dismissal, within 30 days of its filing.

At oral argument, Kirk did not offer a satisfactory explanation for that failure, citing only "procedural" difficulties in obtaining the file from closed case storage.

**5.** Rule 2–535 provides, in pertinent part:

   (a) *Generally.*—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

   (b) *Fraud, Mistake, Irregularity.*—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in the case of fraud, mistake, or irregularity.

Motion to Strike Order of Dismissal, without a hearing.[6] The court did not assess attorney's fees against Claibourne.

When Claibourne filed a Motion for Reconsideration, Willis filed Defendant's Answer to Motion for Reconsideration and Defendant's Motion for Sanctions. The court denied Claibourne's motion,[7] but scheduled a hearing on Willis's motion for sanctions. After that hearing, pursuant to Maryland Rule 1–341,[8] the court assessed $1,500 attorney's fees against Kirk, finding that he filed the Motion to Strike Order of Dismissal and, by implication, the reconsideration motion, without substantial justification, causing Willis to incur substantial attorney's fees.

> During the hearing on sanctions, the circuit court stated:
>
> Now, this Court no longer keeps a docket sheet or a face sheet or it doesn't make docket entries on the file. Instead, docket entries are made, as this Judge understands it, into a data base and the data base becomes what used to be a docket sheet or docket entries. And any persons interested can obtain a print out of the docket entries which has been done in this case and what I am attaching to the file and making part of the record. It is dated February 5, 1995 and which shows that on May 10, 1994, there is a docket entry, "Close[.] [D]ismiss with prejudice[.] [D]ismissal filed." I am interpreting that as an order of Court dismissing this case with prejudice.

---

**6.** Although he did not do so when he filed the motion to strike, Kirk did request a hearing after Willis's answer was filed.

**7.** Once again, the ruling was issued without a hearing. In the motion for reconsideration, Claibourne "request[ed] an opportunity to be fully heard on its Motion to Strike Order of Dismissal."

**8.** Maryland Rule 1–341 provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

There were no court actions or statements at the time of the docket entry that even remotely support interpreting the stipulation of dismissal as an order by the court.

We granted certiorari, on our own motion, while Claibourne's appeal was pending in the Court of Special Appeals and before that court considered it.

1.

As her first contention on appeal, relying on *Davis v. Davis,* 335 Md. 699, 646 A.2d 365 (1994), Claibourne asserts that the Order of Dismissal filed by Willis's attorney with the court, being a stipulation of dismissal and not an order of court, did not constitute a final judgment. Specifically, she maintains that, read together, Maryland Rules 1–202(m) and 2–601 make it clear that two distinct acts, one by the court and the other by the clerk, must coalesce in order to constitute the granting of a judgment.[9] First, the court must render a final order. Second, the clerk must enter the judgment on the docket. Claibourne concedes that the dismissal in this case was entered on the docket by the clerk in accordance with Rule 2–601. She maintains, however, that the court made no judicial determination settling or declaring the law on the matters at issue, rather "[t]he parties merely attempted to enter into a dismissal agreement [which] was memorialized and filed with

---

**9.** Maryland Rule 1–202(m) provides:

**(m) Judgment.**—"Judgment" means any order of court final in its nature entered pursuant to these rules.

Rule 2–601 provides, in pertinent part:

**(a) When entered.**—Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the clerk shall enter the judgment as directed by the court. Unless the court orders otherwise, entry of the judgment shall not be delayed pending a determination of the amount of costs.

**(b) *Method of Entry—Date of Judgment.***—The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

the clerk." Thus, Claibourne continues, because only the second of the prerequisites of a judgment occurred in this case, the purely ministerial, albeit important, act of making a record of the judgment, Rule 2–535, with its requirement that, in this case, mistake or irregularity be established in order to qualify for relief, does not apply. As a result, Claibourne submits, the issue is only whether the court's refusal to strike or amend the Order of Dismissal was an abuse of discretion.

■ It is true, as Claibourne points out, that issuance of a final order and entry of that order on the docket are the two required acts for an action of court to be deemed the granting of a judgment. *Davis,* 335 Md. at 710, 646 A.2d at 370. And, to be sure, it is also true, as this Court observed in *Davis,* that " '[t]here are no hard and fast rules for determining what is a judgment,' " *id.* at 711, 646 A.2d at 370 (quoting *Associated Press v. Taft–Ingalls Corp.,* 323 F.2d 114, 115 (6th Cir.1963)), rather, "whether a judgment has been rendered in a particular case is an inquiry that must be made on a case-by-case basis and which focuses upon the actions and statements of the court." *Id.* at 711, 646 A.2d at 371. Claibourne's civil action against Willis, however, did not terminate by an order of court. It terminated pursuant to a voluntary dismissal, as recognized in Maryland Rule 2–506. That rule reads in relevant part:

(a) **By Notice of Dismissal or Stipulation.**—Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

(b) **By Order of Court.**—Except as provided in section (a) of this Rule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party

who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

**(c) Effect.**—Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.[10]

Rule 2–535(b) does apply to a voluntary dismissal with prejudice, signed by all of the parties. At least one effect of the dismissal with prejudice is the same as a court entered final adjudication of the merits. "When the stipulation is made with prejudice, the voluntary dismissal has the same res judicata effect as a final adjudication on the merits favorable to the defendant." 8 J.W. Moore, *Moore's Federal Practice* § 41.34[6][c] (1997) (footnote omitted). Because of the similarity between the effect of a dismissal with prejudice by stipulation and a dismissal with prejudice by the court, the review of the circuit court's discretion should be under standards analogous to those under Rule 2–535(b), even if that rule is not directly applicable.

It is well settled that "mistake," as used in Rule 2–535(b), is limited to a jurisdictional error, such as where the Court lacks the power to enter the judgment. *Tandra S. v. Tyrone W.,* 336 Md. 303, 317, 648 A.2d 439, 445 (1994); *see Hamilos v. Hamilos,* 297 Md. 99, 107, 465 A.2d 445, 450 (1983). "The typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence, the court never obtains personal jurisdiction over a party." *Tandra S.,* 336 Md. at 317, 648 A.2d at 445; *see also*

---

10. To the extent that Claibourne's argument is that in order for a stipulation of dismissal to be a judgment it must have been dismissed twice, pursuant to Rule 2–506(c), it is simply wrong, being predicated on a plain misreading of the Rule. The argument evidences a lack of appreciation of the distinction between two dismissals without prejudice and a dismissal expressly with prejudice.

*Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 386–87, 347 A.2d 837, 840–41 (1975) (providing numerous examples of mistakes, non-jurisdictional in nature, which would not permit a court to exercise its revisory power).

Judging from its comments during the sanctions hearing, the circuit court viewed the actions of both counsel[11] with respect to the Order of Dismissal, specifically concerning its drafting and its filing, as mistakes, that they acted inadvertently or were careless, or negligent. So viewed, it found no basis to strike or otherwise alter the order. In so concluding, the court did not err.[12]

2.

▉ The final contention on appeal is that the circuit court abused its discretion in sanctioning Claibourne's attorney, pursuant to Rule 1–341. She submits that, at all times, her case was prosecuted in good faith. She further submits that she had the right to move to strike the dismissal because it was filed in error, and thus, the imposition of sanctions was unwarranted.

The award of attorney's fees under Rule 1–341 is an "extraordinary sanction" and it "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Talley v. Talley*, 317 Md. 428, 434–36, 564 A.2d 777, 780–81 (1989); *see also Inlet Assoc. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 277 n. 4, 596 A.2d 1049, 1061 n. 4 (1991) (Bell, J., dissenting); *Major v. First Virginia Bank–Central*

---

**11.** As to Seiden, the court made certain assumptions, which Claibourne accepted:

> ... I am going to assume that you, Mr. Milne are correct. And that what you sent to Mr. Seiden, should have turned on some lights. Sending him the wrong hat. I am also going to assume that for whatever reason, it didn't turn on the lights. Maybe Seiden was negligent, maybe he was careless, maybe he disagrees with you about the light. For whatever reason, he doesn't do what you think he should have done.

**12.** A different situation would have been presented had the court found that Seiden acted intentionally.

*Maryland,* 97 Md.App. 520, 530, 631 A.2d 127, 132, *cert. denied* 331 Md. 480, 628 A.2d 1067 (1993). In addition, before attorney's fees may be assessed as a sanction under Rule 1–341, the court must make two separate findings:

> First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith and/or lack of substantial justification merits the assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Inlet,* 324 Md. at 267–68, 596 A.2d at 1056; *see also Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.,* 323 Md. 200, 210, 592 A.2d 498, 503 (1991).

To maintain or defend a claim "in bad faith" means "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet,* 324 Md. at 268, 596 A.2d at 1056 (citing *Roadway Express Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501 (1980); *Johnson v. Baker,* 84 Md.App. 521, 581 A.2d 48, *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991)). "Substantial justification" for prosecuting an action exists when there is "a reasonable basis for believing that [the] case will generate a factual issue for the fact-finder at trial." *Id.* (quoting *Needle v. White,* 81 Md.App. 463, 476, 568 A.2d 856, 863, *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990)). Moreover, in *Newman v. Reilly,* 314 Md. 364, 550 A.2d 959 (1988), we stated that, to constitute substantial justification, a party's position should be "fairly debatable" and "within the realm of 'legitimate advocacy.'" *Id.* at 381, 550 A.2d at 967–68.

The court specifically found, after a hearing, that Claibourne's attorney had no substantial justification for filing first a motion to strike an order whose filing his "negligence" or "carelessness" facilitated, and then a motion to reconsider its denial. The court believed that he should have admitted

his mistake, rather than cause his adversary "to incur . . . extensive attorney's fees."

The record in this case supports Claibourne's counsel's contention that his case met the *Newman* standard. Clearly, as our disposition of the issue reflects, the final judgment argument was somewhat better than simply "fairly debatable" and, therefore his basis for asking the court to strike or alter the order of dismissal was at least "within the realm of legitimate advocacy," notwithstanding our affirmance of the court's rejection of it. Accordingly, we conclude that the assessment of counsel fees under the circumstances was an abuse of discretion.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY DENYING MOTION TO STRIKE ORDER OF DISMISSAL AFFIRMED; JUDGMENT ASSESSING COUNSEL FEES AGAINST APPELLANT'S COUNSEL REVERSED. COSTS TO BE PAID ONE–HALF BY THE APPELLANT AND ONE–HALF BY THE APPELLEE.