814 A.2d 557

**Tyrone MOORE**

v.

**Clara MILEY, Superintendent.**

**No. 40, Sept. Term, 2002.**

Court of Appeals of Maryland.

Jan. 7, 2003.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

When we took this case from the Court of Special Appeals before that court could consider it,[1] we had the best of

---

1. 369 Md. 570, 801 A.2d 1031 (2002).

intentions.   The statute in question, Maryland Code (1998 Repl.Vol., 2001 Supp.), Cts. & Jud. Proc. Article, § 3–8A–07 (Retention, termination, or waiver of [juvenile] jurisdiction),[2] suggested interesting legal and policy questions concerning the contours bounding the juvenile justice and the adult criminal justice schemes in Maryland.   Unfortunately, although our decision in the instant case may cast some light on the application of the pertinent statute in limited circumstances, more questions remain than are answered here.   The unexplored areas seem worthy of timely legislative clarification.

Section 3–8A–07 provides, in relevant part:

§ 3–8A–07.   Retention, termination, or waiver of jurisdiction.

(a) Duration.—If the court obtains jurisdiction over a child under this subtitle, that jurisdiction continues until that person reaches 21 years of age unless terminated sooner.

(b) Offenses committed after age of 18.—This section does not affect the jurisdiction of other courts over a person who commits an offense after the person reaches the age of 18.

(c) Termination.—*Unless otherwise ordered by the court,* the court's jurisdiction is terminated over a person who has reached 18 when he is convicted of a crime . . . .

(emphasis added).[3]   How this statute applies to the facts of the present case will be explained.   We encourage the Legisla-

---

2.   Unless otherwise indicated, all statutory citations in this opinion are to Subtitle 8A of the Courts & Judicial Proceedings Article.

3.   Section 3–8A–07 is derived from Maryland Code (1957, 1966 Repl. Vol., 1969 Supp.), Article 26, § 70–3, which was enacted by Laws of Maryland 1969, ch. 432.   Section 70–3 provided:

§ 70–3.   Retention or termination of jurisdiction.

Jurisdiction obtained by the court in the case of a child shall be retained by it for the purposes of this subtitle until he becomes twenty-one years of age, unless terminated prior thereto.   If a minor eighteen years of age or over already under the court's jurisdiction is convicted of a crime, that conviction shall terminate the jurisdiction of the juvenile court, unless the juvenile court otherwise orders or unless the conviction is for a violation of any provision of Articles

ture to consider at its earliest opportunity how it should apply to other foreseeable scenarios.

## I.

Tyrone Moore,[4] Appellant, first entered Maryland's juvenile justice system on 23 July 1998 when the State's Attorney for Montgomery County filed a delinquency petition charging Moore, then fifteen years old,[5] with misconduct amounting to first degree rape and related delinquent acts alleged to have occurred on 20 March 1998. The District Court of Maryland, sitting in Montgomery County as a juvenile court at the time, found Moore to be a delinquent child and committed him to the Department of Juvenile Justice ("DJJ") for placement at the Charles Hickey School.

The juvenile court placed Moore on probation on 14 September 1999. On 18 January 2001, the juvenile court committed Moore to the DJJ for placement at the Family Advocacy Service Program and ordered his participation in the Electronic Home Monitoring Program.

Moore's eighteenth birthday occurred on 12 March 2001. The DJJ petitioned the juvenile court on 19 July 2001 to revoke Moore's probation alleging that "Tyrone went AWOL

---

14B, 66C, or 66½ or of any other traffic law or ordinance, other than manslaughter by automobile, unauthorized use or occupancy of a motor vehicle, tampering with a motor vehicle, or operating a vehicle while under the influence of intoxicating liquors or drugs.

In 1973, § 70–3 was repealed and replaced by Courts Article, § 3–815. *See* Laws of Maryland 1973, 1st Special Session, ch.2. In 1975, § 3–815 was repealed and replaced by § 3–806, see Laws of Maryland 1975, ch. 554, and in 2001, § 3–806 and § 3–807 were combined into § 3–8A–07. Laws of Maryland, ch. 415, effective October 1, 2001. While the statute has undergone a number of organizational and stylistic changes since its enaction in 1969, for purposes of this case the substance of the statute has remained the same. No relevant legislative history was discovered.

4. Although this case involves in part an appeal from a juvenile disposition, the parties have used Appellant's full name in their briefs. We shall follow suit under the circumstances. *But see* Md. Rule 8–121.

5. Appellant's date of birth was 12 March 1983.

from the Family Advocacy Program on July 17, 2001, and has not been seen since." At an emergency hearing on 17 August 2001, the juvenile court issued a juvenile warrant for a writ of attachment of Moore. The court received from the DJJ another petition for revocation of probation on 19 September 2001 reiterating the allegations made in the earlier petition and adding that "Tyrone has not contacted his Juvenile counselor since July 20, 2001."

The writ of attachment was served on Appellant on 17 September 2001. As a result of his misconduct during the execution of the juvenile court's writ, Moore was charged as an adult in the District Court with resisting arrest. He pled guilty to the charge on 2 November 2001, and was sentenced to eighteen months incarceration and a $500.00 fine, both suspended,[6] and placed on supervised probation for one year.

The juvenile court then held an emergency hearing on 5 November 2001 regarding the status of Moore's probation in the juvenile case. At that hearing, Moore's counsel moved to dismiss the petition for revocation of probation, arguing that the juvenile court's jurisdiction had been terminated on 2 November 2001 by operation of law as a result of Moore's conviction, as an adult, for resisting arrest. The court denied the motion to dismiss[7] and ordered that Moore be detained at

---

6. Appellant was incarcerated for 46 days prior to trial.

7. The court ruled as follows,

Well, the phrase [in § 3–8A–07(c) ], "Unless otherwise ordered by the Court ...," I think is important; and I am holding that the juvenile warrant, the writ of attachment, is an order by the Court, intending to exercise the Court's jurisdiction, commanding that he be taken into custody for having been AWOL, and at the same time, there was an outstanding petition for violation of probation.

I think that is otherwise ordering by the Court, and I don't see how the Court, having first been made aware, as you spoke it, that he was convicted of a crime, could have acted [earlier]; and I just don't construe the intention of the legislature to be that while there is an outstanding order of the Court for exercising jurisdiction over Mr. Moore, that our jurisdiction automatically terminates upon conviction.

the Alfred D. Noyes Children's Center pending a violation of probation hearing.

Moore filed a petition for a writ of habeas corpus in the Circuit Court for Montgomery County on the basis that the juvenile court's jurisdiction had been terminated by Moore's conviction as an adult. The petition was denied without a hearing on 19 November 2001, and Moore took an appeal to the Court of Special Appeals on 26 November 2001.

On 20 December 2001, a violation of probation hearing was held in the juvenile court where, once again, Moore's counsel moved to dismiss the petition for revocation of probation on the basis that the juvenile court's jurisdiction had terminated. The juvenile court judge denied the motion to dismiss, found that Moore was in violation of his probation, and ordered that his detention at the Noyes Center be continued pending his return to the Hickey School.

Moore filed with the Court of Special Appeals a notice of appeal on 26 December 2001 from the juvenile court's order of 20 December 2001. Subsequently, on 28 December 2001, Moore also filed an application for leave to appeal from that order. The Court of Special Appeals consolidated the appeal and application for leave to appeal as a single application for leave to appeal. The newly consolidated application for leave to appeal was granted and the case was transferred to the court's regular docket. We granted certiorari on our own initiative.

## II.

Appellant contended in his brief that the juvenile court's jurisdiction terminated by operation of law, under § 3–8A–07, when Appellant, who had attained previously his eighteenth birthday, was convicted in the District Court of the crime of resisting arrest. Appellant maintained that the language of

---

You say it is the plain language, and what I say is that, "Unless otherwise ordered by the Court . . .," that is fulfilled by the issuance of the writ of attachment, which was issued on August 17th.

the statute clearly states that when two conditions are satisfied—(1) the person turns eighteen, and (2) the person, after turning eighteen, is convicted of a crime—the juvenile court's jurisdiction is terminated by operation of law "unless otherwise ordered" by the juvenile court. Any actions taken by that court subsequent to the 2 November 2001 conviction, he claimed, were extra-judicial acts exceeding the juvenile court's authority. Accordingly, the court did not have jurisdiction to revoke Appellant's probation or re-commit him to the DJJ for placement in the Hickey School.

At oral argument, Appellant urged that the language of subsection (c) of the statute, providing the "[u]nless otherwise ordered by the [juvenile] court" exception, could be satisfied only by an order entered *prior* to the criminal conviction. This must be so, he continued, because once juvenile jurisdiction is terminated by the entry of a criminal conviction it can not be restored by an order of the divested juvenile court. Moreover, such an order, he stated, must contain an express determination by the juvenile court of its intent to continue its jurisdiction notwithstanding the possibility of conviction of the adult criminal charge. Appellant also contended that, even if the juvenile court does not know of the criminal proceeding, the juvenile court's jurisdiction nonetheless automatically terminates upon entry of the conviction. Thus, despite the absence from the statute of a mechanism for providing notice to the juvenile court of a pending criminal charge prior to conviction, the juvenile court must issue the saving order prior to conviction. To permit otherwise, Appellant argued, would render subsection (c) meaningless. Appellant suggested various ways and means that a juvenile court could be made aware in timely fashion of a pending adult charge in order that discretion could be exercised intelligently under the statute.[8]

In the present case, Appellant asserts that the Office of the State's Attorney for Montgomery County, which was responsi-

---

8. Appellant's suggestions assumed that either the Office of the State's Attorney or the DJJ should coordinate the tracking of juveniles within the juvenile system *and* in the criminal court and provide notice to the juvenile court prior to entry of any conviction.

ble for prosecuting Appellant for resisting arrest, had the opportunity, which it failed to take, to contact the DJJ to determine its wishes and, if appropriate, seek a collateral and timely order from the juvenile court asking it to retain jurisdiction over Appellant before Appellant's plea was accepted and the criminal conviction entered. Appellant denies that the "unless otherwise ordered" provision of § 3–8A–07(c) was satisfied by the juvenile warrant/writ of attachment issued by the juvenile court[9] prior to Appellant's arrest on the criminal charge. Appellant minimizes the significance of the juvenile court's writ here, noting that, for purposes of the Juvenile Causes Act, "[i]t is clear that jurisdiction and custody are separate and distinct." *In re Johanna F.*, 284 Md. 643, 651, 399 A.2d 245, 249 (1979). The language of the writ, contends Appellant, merely orders that Appellant be taken into custody and detained pending a hearing, and that the writ be lodged as a detainer for his continued detention if he is detained or committed for another offense. There was no indication in the language of the writ as to whether the juvenile court contemplated retaining jurisdiction in the event of a possible conviction on the particular criminal charge involved in this case. Appellant argues, therefore, that there is no "order" contained in the writ reserving jurisdiction as contemplated by § 3–8A–07(c).

The State ("Appellees")[10] contends that the juvenile court retained its jurisdiction over Appellant by its 17 August 2001 writ and related actions. Appellees assert that the juvenile court was not divested of its jurisdiction over Appellant and, therefore, the Circuit Court in the habeas action and the juvenile court properly rejected Appellant's claims.

---

9. The writ reads in relevant part that "custody be immediately assumed by this Court," and "Ordered that if [Appellant] is detained/committed for another offense, this Warrant is to be lodged as a detainer for the continued detention of [Appellant]."

10. Clara Miley, named as an Appellee, is Superintendent of the Noyes Center, where Appellant was committed, by the juvenile court's 20 December 2001 order, pending placement at the Hickey School.

Appellees link the language of subsection (c) and the language of the 17 August 2001 writ to conclude that the juvenile court correctly held that

the juvenile warrant, the writ of attachment, is an order by the Court, intending to exercise the Court's jurisdiction, commanding that he be taken into custody for having been AWOL and at the same time there was an outstanding petition for violation of probation. I think that is otherwise ordering by the Court.

The writ, Appellees urge, was an order re-asserting the juvenile court's jurisdiction over Appellant within the meaning of § 3–8A–07(c).

Appellees seek to undermine Appellant's reliance on *In re Franklin P.*, 366 Md. 306, 783 A.2d 673 (2001) and *In re Johanna F.*, 284 Md. 643, 399 A.2d 245 (1979). *Franklin P.* held that once the juvenile court divested itself of jurisdiction by granting a motion to waive the case to the adult criminal court, the juvenile court lacked the power to reconsider its action and divest the criminal court of jurisdiction. In contrast, Appellees maintain that in the present matter the juvenile court, by issuing the writ of attachment that led to Appellant's arrest and resultant criminal charge, clearly exercised and re-asserted its jurisdiction and indicated its intention to continue its jurisdiction over Appellant at least for purposes of the alleged probation violations.

Appellees also fault Appellant's reliance on *Johanna F.*, which examined the juvenile court's custody upon the expiration of an order for the custody of the juvenile. This Court held there that the juvenile court's jurisdiction, obtained by the petition, adjudication, and determination of delinquency, remained unaffected by the lapse of a subsequent juvenile custody order. Section 3–8A–07(a) permits the juvenile court's jurisdiction to continue until the person reaches twenty-one years old, "unless terminated sooner." In the present matter, Appellees argue, "it is equally clear that the juvenile court properly concluded that its jurisdiction continued." The amalgam of the juvenile court's writ of attachment and the

various emergency hearings amounted to the juvenile court "otherwise order[ing]" that the criminal conviction did not terminate juvenile jurisdiction. Finally, Appellees urge that it was "incumbent upon the juvenile court, pursuant to § 3–8A–02(b)," [11] to "liberally construe" the operation of § 3–8A–07 so as to effectuate the purposes of the juvenile causes subtitle, including the treatment and rehabilitative goals of juvenile proceedings.

In response to Appellant's amplified arguments at oral argument, Appellees advocated that the statute would be unworkable if interpreted to require the juvenile court to act without prior notice of the criminal charge that might lead to a conviction. They pointed out that the statute identified no mechanism to ensure the juvenile court or the DJJ would be notified prior to a conviction. The juvenile court, as it did in the present matter, might hear of the criminal conviction only after the conviction had been entered and juvenile jurisdiction terminated. Furthermore, Appellees suggested that the statute's legislative history indicated that the Legislature intended that the conviction of a juvenile for a relatively minor offense, such as occurred here, not interfere with the general rehabilitative program fashioned by the juvenile court.[12] Recognition of the Legislature's intent, Appellees argued, requires this Court to find the language of the writ of attachment sufficient to preserve the juvenile court's jurisdiction over Appellant.

## III.

### A.

This Court repeatedly has noted the Legislature's intent that the system of juvenile justice in Maryland is guided

---

11. Section 3–8A–02(b) states, "[t]his subtitle shall be liberally construed to effectuate these purposes [as enumerated in subsection (c) ]."

12. Although Appellees, at oral argument, alluded to a "comment" from the legislative history apparently of ch. 554, Laws 1975 (see n. 3, supra), there was no discussion of such history in their brief. We were unable to corroborate independently the existence of any relevant legislative history.

generally by principles of protection and rehabilitation of the individual rather than a societal goal of punishment and retribution. *See In re Victor B.*, 336 Md. 85, 90–91, 646 A.2d 1012, 1014–15 (1994) (discussing the historical development of the juvenile justice system in Maryland); *In re Johnson*, 254 Md. 517, 522, 255 A.2d 419, 422 (1969) (stating that the concept underlying juvenile proceedings is protection of the juvenile). We have recognized the legislative intent of the Juvenile Causes Act "to rehabilitate and treat juvenile delinquents so that they become useful and productive members of society." *In re Anthony R.*, 362 Md. 51, 72, 763 A.2d 136, 148 (2000). Although a "delinquent child" is defined as a child "who has committed a delinquent act and requires guidance, treatment, or rehabilitation," Md.Code (1973, 2002 Repl.Vol.), Cts. & Jud. Proc. Art., § 3–8A–01(*l*), the keystone of Maryland's disposition of juvenile delinquents is that "the moral responsibility or blameworthiness of the child [is] of no consequence," such that delinquency adjudication is seen as the opportunity for the State to provide needed rehabilitative intervention. *Victor B.*, 336 Md. at 91–92, 646 A.2d at 1015. *See Moquin v. State*, 216 Md. 524, 528, 140 A.2d 914, 916 (1958) (asserting that the juvenile system does not contemplate punishing children found to be delinquent, but rather requires attempting to correct and rehabilitate such children). Even when this Court has extended "criminal defendant" type rights to juveniles, the cases explain that the overall proceedings maintain their focus on the special goals of delinquency adjudication. *See In re Thomas J.*, 372 Md. 50, 70, 811 A.2d 310 (2002) (holding that the Due Process Clause of the Fourteenth Amendment and Article 21 of the Maryland Declaration of Rights require that the right to a speedy trial apply to juvenile proceedings); *In re Anthony R.*, 362 Md. at 69, 763 A.2d at 146 (stating that despite the civil nature of juvenile proceedings a juvenile does not relinquish all rights a person would be entitled to in a criminal proceeding). The purposes enumerated for subtitle 8A of the Code addressing juvenile causes for children other than children in need of assistance and adults include balancing the competing objectives of: "(i) Public safety and the protection of the community; (ii) Accountability of the child to

the victim and the community for offenses committed; and (iii) Competency and character development to assist children in becoming responsible and productive members of society . . . ." Md.Code (1973, 2002 Repl.Vol.), Cts. & Jud. Proc. Art., § 3–8A–02(a)(1)(i)–(iii).

The statute addressing jurisdiction in the juvenile court was written mindful of the special goals of the juvenile justice system. Md.Code (1973, 2002 Repl.Vol.), Cts. & Jud. Proc. Art., § 3–8A–03 comprehensively provides the juvenile court with exclusive original jurisdiction over children "alleged to be delinquent or in need of supervision or who ha[ve] received a citation for a violation." [13] Once jurisdiction over the juvenile is vested in the juvenile court, that jurisdiction may be waived

---

**13.** The text of § 3–8A–03 provides in relevant part:

(a) Child alleged to be delinquent, in need of supervision or with citation for violation; termination of parental rights; peace order proceedings; Interstate compact on Juveniles.—In addition to the jurisdiction specified in Subtitle 8 of this title, the court has exclusive original jurisdiction over:

(1) A child who is alleged to be delinquent or in need of supervision or who has received a citation for a violation;

(2) Except as provided in subsection (d)(6) of this section, a peace order proceeding in which the respondent is a child; and

(3) Proceedings arising under the Interstate Compact on Juveniles.

(b) Proceedings pursuant to § 3–8A–30 of this subtitle.—The court has concurrent jurisdiction over proceedings against an adult for the violation of § 3–8A–30 of this subtitle. However, the court may waive its jurisdiction under this subsection upon its own motion or upon the motion of any party to the proceeding, if charges against the adult arising from the same incident are pending in the criminal court. Upon motion by either the State's Attorney or the adult charged under § 3–8A–30 of this subtitle, the court shall waive its jurisdiction, and the adult shall be tried in the criminal court according to the usual criminal procedure.

. . . .

(d) Limitations.—The court does not have jurisdiction over:

(1) A child at least 14 years old alleged to have done an act which, if committed by an adult, would be a crime punishable by death or life imprisonment, as well as all other charges against the child arising out of the same incident, unless an order removing the proceeding to the court has been filed under § 4–202 of the Criminal Procedure Article;

(2) A child at least 16 years old alleged to have done an act in violation of any provision of the Transportation Article or other traffic

generally and only pursuant to the procedures outlined in Md.Code (1973, 1998 Repl.Vol., 2001 Supp.), Cts. & Jud. Proc. Art., § 3–8A–06. Once the juvenile court obtains jurisdiction over a child pursuant to subtitle 8A, that jurisdiction, unless waived, continues until the child turns twenty-one years old or is terminated otherwise. Md.Code (1973, 1998 Repl.Vol., 2001 Supp.), Cts. & Jud. Proc. Art., § 3–8A–07(a). One of the "otherwise" situations, provided in § 3–8A–07(c), occurs when a person eighteen years old or older is convicted of a crime in adult court, *"unless otherwise ordered by the [juvenile] court."*

This Court has recognized as a general principle of criminal law that jurisdiction, once obtained, continues despite the occurrence of subsequent events the happening of which before jurisdiction attached would have prevented jurisdiction from vesting originally. For example, in *Franklin v. State,* 264 Md. 62, 285 A.2d 616 (1972), Franklin was tried and convicted in the Circuit Court for Baltimore City of robbery with a deadly weapon. The crime was committed when Franklin was sixteen years old.[14] This Court found that Franklin, as a juvenile, and pursuant to then extant Maryland Code (1957, 1969 Supp.), Article 26, § 70–16, could not be tried in adult criminal court unless the juvenile court so ordered following a waiver hearing.[15] We noted that because the

---

law or ordinance, except an act that prescribes a penalty of incarceration;

(3) A child at least 16 years old alleged to have done an act in violation of any provision of law, rule, or regulation governing the use or operation of a boat, except an act that prescribes a penalty of incarceration;

(4) A child at least 16 years old alleged to have committed any of the following crimes, as well as all other charges against the child arising out of the same incident, unless an order removing the proceeding to the court has been filed under § 4–202 of the Criminal Procedure Article: . . . .

**14.** In Baltimore City, at the time Franklin was first tried, a child under the age of sixteen was a juvenile, but in the counties in Maryland a child under the age of eighteen was considered a juvenile. Maryland Code (1957, 1969 Supp.), Article 26, § 70–1(c).

**15.** The grist for our decision in *Franklin* was the application of *Greene v. State,* 11 Md.App. 106, 273 A.2d 830 (1971), which adopted the

Legislature expressly restricted the right of the criminal court to try a juvenile, without waiver by the juvenile court, Franklin's criminal trial was mere form lacking substance. The conviction produced by that trial, therefore, was null and void.

*In re Darren M.*, 358 Md. 104, 747 A.2d 612 (2000), was another case where a trial court facially exercising criminal jurisdiction exceeded its jurisdiction. Darren M. was charged originally in the District Court of Maryland, sitting in Baltimore City, with one count of rape in the first degree, assault in the second degree, use of a handgun in the commission of a felony or crime of violence, use of a deadly weapon with intent to injure, and carrying a handgun. 358 Md. at 106, 747 A.2d at 612. Before trial, the State entered a *nolle prosequi* to the counts of first degree rape, first degree assault, use of a handgun in the commission of a felony or crime of violence, and carrying a handgun. 358 Md. at 106–07, 747 A.2d at 613. Trial commenced in the District Court on the remaining counts. After receiving testimony from the first witness, it became apparent to all concerned, supposedly for the first time, that Darren M. was only seventeen at the time the alleged crime occurred. *Id.* At that point the State *nol prossed* the remaining criminal charges and subsequently filed a delinquency petition in the Circuit Court for Baltimore City, sitting as the juvenile court. The Circuit Court dismissed the petition, concluding that the District Court possessed exclusive jurisdiction given Darren M.'s age at the time of the conduct complained of and the nature of the alleged crimes.

The jurisdictional determination in *Darren M.* was based on age; therefore, the age of the person at the time he allegedly committed the charge controlled. Finding that the juvenile court had jurisdiction over Darren M., we stated that "if the jurisdiction once attached to the person and subject matter of the litigation, the subsequent happening of events, though

finality rule applied in *Long v. Robinson,* 436 F.2d 1116 (4th Cir.1971), finding the Baltimore City statutory treatment of juveniles to be arbitrary, unreasonable, and a denial of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

they are of such a character as would have prevented jurisdiction from attaching in the first instance, will not operate to oust the jurisdiction already attached." 358 Md. at 109, 747 A.2d at 614.

■ At the heart of the present matter is whether the juvenile court's pre-existing and actively-exercised jurisdiction (but not custody) over Appellant continued despite his subsequent criminal conviction in the District Court, the occurrence of which the juvenile court was informed only after-the-fact by Appellant's counsel at the 5 November 2001 emergency hearing on the petition to revoke Appellant's probation in the juvenile case. According to the statute, jurisdiction to adjudicate the probation violation petition and take commensurate action would continue in the juvenile court if that court "otherwise ordered," the conviction notwithstanding.

■ When interpreting statutes, the "paramount goal ... is to identify and effectuate the legislative intent underlying the statute at issue." *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000). The legislative intent can be divined through an analysis of the plain language of the statute itself and from consideration of the statutory scheme as a whole. *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001). Where "the words of a statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning," we "will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 647 A.2d 1204 (1994). Where the language is ambiguous, however, we look beyond the language of the statute to discern the legislative intent. *In re Mark M.,* 365 Md. at 711, 782 A.2d at 346. It is then appropriate to look to the legislative history and other relevant evidence external to the statute that may manifest intent or general purpose, such as "a bill's title and function paragraphs, amendments ... and other material that fairly bears on the fundamental issue of legislative purpose or goal." *Anthony R.,* 362 Md. at 58, 763 A.2d at 140. Construction of a statute, however, that is "unreasonable, illogical, unjust, or inconsistent with common sense should be avoided."

*Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999)
(quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594
(1992)).

On its face, § 3–8A–07 is ambiguous or unclear in a number
of ways. It does not specify, for purposes of subsection (c),
what constitutes an "order," [16] what form or content the order
is to take, or when in the course of events the order must
issue. More importantly, there is no mechanism to ensure
notice is given to the juvenile court before the adult court
convicts the individual. Lack of timely notice prior to the
entry of a criminal conviction places the juvenile court in the
position of attempting to assert its jurisdiction after the
purported terminable act has occurred. That has its prob-
lems. According to Appellant, the burden would be on the
juvenile court to assert or re-assert its jurisdiction at a time
when it quite possibly does not know it needs to do so. In the
absence of both clear and unambiguous statutory language
and any illuminating legislative history regarding § 3–8A–
07(c), the legislative intent as to the operational mechanics of
the enactment is unclear. Although the general purposes of
the Juvenile Causes Act are clear, it is less apparent how the
operation of subsection (c) was intended to advance or trump
those purposes.

---

**16.** The definitional section of Subtitle 8A, § 3–8A–01, is of no assis-
tance. Title 11 (Juvenile Causes) of the Maryland Rules likewise offers
no definition of the term "order," however, Md. Rule 1–202 (Defini-
tions) (aa), applicable to the rules generally, defines "writ" as a type of
"written order issued by a court...." There are cases that have
defined what constitutes an "order" in other contexts; however, none
are particularly relevant to the context of the "unless otherwise or-
dered" language of § 3–8A–07. *See, e.g., Jones v. Hubbard,* 356 Md.
513, 520, 740 A.2d 1004, 1008 (1999) (interpreting a "final order"
pursuant to Maryland Rule 2–601 (1997) to be synonymous with a
"judgment" and further noting that a final order is rendered when the
court performs an act by which it settles and declares the decision of
the law on the matters at issue); *Claibourne v. Willis,* 347 Md. 684,
690–92, 702 A.2d 293, 296 (1997) (finding that a voluntary stipulation
of dismissal entered on the docket is not an "order" although it is a
final judgment for res judicata purposes pursuant to Maryland Rule 1–
202(m) (1997)).

Considering the two extremes of the statutory interpretations offered by the parties, we reject both as unreasonable and inconsistent with common sense in their application, although, as we shall explain, a mitigated version of Appellees' approach influences somewhat the result in this particular case. Appellant argues that whether the juvenile court receives notice of the pending criminal charge prior to conviction is immaterial. His view of the statute requires the juvenile court to enter an order retaining jurisdiction over the juvenile before the conviction is entered. Appellant's solution to the absence of a formal notice mechanism in the statute is that the Office of the State's Attorney should step into the breach and bear the responsibility of providing notice to the juvenile court because it is involved in both the juvenile proceeding and the criminal proceeding. In many State's Attorney's offices in Maryland, particularly in the more populous jurisdictions, however, juvenile proceedings are handled by a separate group of attorneys than are criminal prosecutions (which usually are further broken into District Court and Circuit Court divisions). Thus, we are leery of Appellant's facile assumption of the logistical ease with which his proposal could be implemented. For Appellant's conception of a rational application of the statute to work, there must be a more certain mechanism studied and put in place than has been suggested here in order to allow the juvenile court to give timely consideration to whether to retain jurisdiction prior to the criminal conviction of the juvenile. If, as Appellant urges, the juvenile court is bound to meet the "order" requirement of subsection (c) to preserve its jurisdiction over the juvenile before a criminal conviction occurs, but without having received notice of the pending criminal proceedings, subsection (c) would be rendered virtually meaningless in operation. The "unless otherwise ordered" language becomes superfluous as the jurisdiction of the juvenile court, in practice, likely will be terminated upon conviction of the juvenile before the court has an opportunity to act. We do not perceive that the Legislature included a specific vehicle for the juvenile court's jurisdiction *not* to be terminated upon a criminal conviction only to

leave that vehicle to operate, if at all, through random chance. Furthermore, the application of subsection (c), according to Appellant's interpretation, risks arbitrary and inconsistent application in the absence of a consistent mechanism for providing notice. .

Appellees' suggested operation of the statute, on the other hand, fosters, to an unacceptable degree, a different kind of arbitrariness. In order to avoid the loss of jurisdiction upon entry of a conviction, in the absence of a reliable notice mechanism in the statute, Appellees sanction the precautionary insertion in all orders issued by juvenile courts, before juveniles reach the age of eighteen, of boilerplate language to the effect "if the juvenile involved in this case is charged subsequently with a crime, the juvenile court hereby expresses its intent to retain jurisdiction over the juvenile for any and all purposes relevant to the pending juvenile case, regardless of whether a conviction results." Although there is nothing apparent in the language of the statute that would prohibit the implementation of such a strategy by juvenile courts, we view such a practice necessarily as encouraging the risk of abuse of discretion when exercising totally in the blind the option to retain jurisdiction. Furthermore, the rehabilitative goals of the 'Juvenile Causes Act are furthered more likely by an interpretation that permits juvenile courts to exercise discretion intelligently in deciding whether to waive their jurisdiction over juveniles when adult courts also have exercised their jurisdiction appropriately over the individuals. The waiver provisions in § 3–8A–06 reflect the priority given to the juvenile court and § 3–8A–07(c) likewise should be construed in a manner to maximize the juvenile court's flexibility and ability to exercise its discretion when determining whether to continue its jurisdiction over a juvenile charged as an adult in the adult criminal court.

With regard to the language of the writ of attachment in the present case, Appellant contends that the language of the writ in this case is not specific enough to constitute an "order" within the meaning of § 3–8A–07(c). He argues that the language, "if the Respondent [Moore] is detained/committed

for another offense, this Warrant is to be lodged as a detainer for the continued detention of the Respondent," pertains only to the physical custody of Appellant and not to the jurisdiction of the juvenile court. The blind spot in this argument is that the purpose of the writ was to bring Appellant before the juvenile court for a hearing and disposition on the probation violation petition. Just as jurisdiction without custody necessitated the issuance of the writ, custody without jurisdiction over Appellant would be equally futile.

Appellees proffer that the writ of attachment was sufficient indication of the juvenile court's specific and timely intent to exercise jurisdiction over Appellant. Appellees argue that the language contained in the writ was sufficient for the juvenile court, even upon the unforetellable (at least from the juvenile court's vantage) entry of the criminal conviction of Appellant, to retain jurisdiction for the purpose of adjudicating the pending petition to revoke probation and take appropriate action depending on that outcome.

Although the language of the 17 August 2001 writ obviously could not speak specifically to Appellant's 2 November 2001 criminal conviction for resisting arrest on 17 September 2001, it contemplated the possibility of subsequent offenses. Resisting arrest certainly qualifies as an "offense." The writ was issued before occurrence of the terminable act contemplated by the statute, even under Appellant's view of when the juvenile court must act. On the present record, we conclude that the juvenile court's issuance of the writ partakes sufficiently of the character of the "order" contemplated in § 3–8A–07(c) to satisfy the statutory pre-requisite for retention of jurisdiction by the juvenile court. The issuance and execution of the writ, vis a vis the commencement of the criminal process leading to the conviction at issue here, evidenced the juvenile court's active and contemporaneous intention to continue the exercise of its jurisdiction over Appellant, at least with regard to the alleged probation violations. As previously noted, the arrest giving rise to the conviction for resisting arrest resulted directly from service of the juvenile court's writ on Appellant.

Section 3–8A–07(b) acknowledges the adult court's jurisdiction over Appellant for committing a crime after reaching the age of eighteen. No one here challenges that proposition. But for the juvenile court's contemporaneous expression of intent, in its writ, to maintain active jurisdiction over Appellant for purposes of adjudicating and taking appropriate action regarding the probation violation allegations, even in the face of some future other "offense," we would be faced with a more difficult question as to the application of § 3–8A–07(c).

Our holding is limited to the facts of the present matter. The language of the statute, as noted *supra*, is ambiguous and the legislative intent in many ways is obscure. It seems desirable, therefore, that the Legislature consider clarification of the statute to make clearer its application.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.*